## T. H. & J. M. ALLEN & Co. *v.* SAMUEL E. BRATTON et al.

1. PROMISSORY NOTE MADE ~~IN ONE STATE~~, PAYABLE IN ANOTHER GOVERNED BY THE LAW OF ~~THE LATTER.~~—A note made in ~~Mississippi~~, to be paid in Tennessee, is governed by the law of the state of Tennessee.

2. LAW OF TENNESSEE—INDORSEE OF NOTE AS COLLATERAL SECURITY FOR ANTECEDENT DEBT.—By the law of Tennessee, an indorsee, who takes a note as collateral security for an antecedent debt, holds it subject to all the equities between the original parties.

3. PROMISSORY NOTE—COMMON LAW—INDORSEE OF NOTE OVER DUE HOLDS SUBJECT TO EQUITIES.—By the common law, the indorsee of a note over due, takes it subject to all the equities between the original parties.

4. VENDOR AND VENDEE—FRAUDULENT MISREPRESENTATION—RESCISSION OF CONTRACT.—Fraud and misrepresentation of a vendor as to the situation and quality of land sold, together with insolvency of the vendor, entitles the vendee to a rescission in equity, and to a decree charging the land with a lien for the purchase money paid on it.

APPEAL from the chancery court of Coahoma county. HARMON, Chancellor.

The opinion of the court presents this case clearly to view.

*Yergers & Nugent,* for appellants.

These were two cases consolidated in the chancery court of Bolivar county, and tried as one.

The material facts upon which the whole case depends, may be briefly stated. On the 10th of November, 1860, Dobbins sold Bratton a tract of land in Coahoma county, and put him in possession thereof under a title bond with W. J. S. Dobbins, as surety. As a part of the consideration, Bratton executed and delivered to Dobbins three promissory notes, each for $7,333.33⅓, maturing respectively in one, two and three years after date. One of these notes maturing in November, 1862, was by Dobbins endorsed and delivered to Allen & Co., to secure an antecedent debt. The notes were executed in Tennessee, and was made payable at a bank in Memphis. Allen & Co. filed their bill to enforce payment of this note by a sale of the land. On the 16th of August, 1867, Bratton filed his original bill against Allen & Co., and Dobbins, seeking a rescission of the original contract of sale, and to subject the lands to payment of the amount paid by him in cash to Dobbins, and certain other debts as set out in his bill. Bratton does not, in his bill, nor in his answer to Allen & Co.'s bill, offer to return to Dobbins the possession of the lands sold him, but prays a simple rescission, a decree for $8,000, amount paid by him, Dobbins, and that it be declared a lien upon the land. The relief prayed proceeds, upon the ground that Dobbins had made fraudulent statements as to his title to the lands, to a material part of which he had no title at all. In his bill, Bratton states "that in the summer of 1861, he discovered that Dobbins was without title or quit claim to portions of the land to such an extent as to render the tract of land no longer desirable to him." Not long after this he saw Dobbins, who told him he need have no fear, that he would in due time forfeit the title. In April, 1862, he became again alarmed, but his fears were

again quieted by Dobbins. In 1866, he was informed that Allen & Co. held one of his notes, and again he saw Dobbins, who informed him he had no title to a part of the land, and could never make any. In his bill, Bratton says that he "had abandoned all idea of future cultivation or occupation of the lands." In 1861, Bratton cultivated the place; occupied it in 1862; leased the lands in 1863, 1864 and 1865; and in 1867 moved on the place himself. So that from 1861 until and including the year 1867, Bratton was in possession of the lands. He does not state in his bill or deposition, that he had abandoned the land, nor does his statement at all corroborate the idea suggested in his answer. Allen & Co., demurred to Bratton's bill, and their demurrer was overruled. One special cause of demurrer is that Bratton does not offer to return the property or account for rents; and another, the *laches* of Bratton, besides the general cause; no equity on the face of the bill.

Allen & Co. became the holders of the note prior to its maturity, and upon the faith of it extended credit to Dobbins.

The original bill was filed to enforce payment of the note by a sale of the land, and there was no attempt to charge Bratton personally with payment of the note. So that he is not to be the sufferer if a decree should go against him. The point presented is, had Bratton a right to a rescission of the contract, and was the decree of the chancellor authorized. We do not controvert the principle advanced in the authorities cited by appellees: That a party purchasing land under a misrepresentation as to title prejudicial in its extent and character, is entitled, under proper circumstances, to a recsission of the contract. But these very authorities deny the right to Bratton: He discovered the defects in his title, in the summer of 1861, again in 1862, and again in 1866. In the two former cases he saw Dob-

bins, and his fears were quieted. He knew the defects in 1861; he continued in possession of the lands, and does not in his bill or answer offer to return the possession to Dobbins, or do anything that will result in placing the parties in *statu quo*. This is the case, and we scarcely think a single authority will sustain the court below in its decree.

In Siddil v. Sims, 9 S. & M. 597, the vendor set aside possession of the property without the vendee's permission, and against his wishes. In English v. Benedict, 25 Miss. 167, the court decides upon the authority in 4 How. 435, that fraudulent representations as to title made by a vendor will entitle the vendee to a recission, and that the vendee is not restricted to his action at law upon the warranty in his deed. In Smith v. Robertson, 23 Ala. 313, the vendee, as soon as he was induced by the conduct of Robertson to suspect the goodness of his vendor's title, offered to rescind the contract, tendered him the possession of the land, and on his refusal to take it, abandoned the possession himself. The court say, this is all he is required to do. The right of a vendee to a rescission of his contract is made to depend upon his promptness in seeking a rescission, and placing, or offering to place, the parties in *statu quo*. In Bryant's exr. v. Booth, 30 Ala. 315, and Foster v. Gressett's heirs, 29 ib. 393, the relief was granted, but in both cases, the delay in bringing the suit was accounted for. There can be no doubt that before the vendee can rescind, he must show that upon a discovery of the fraud, he was prompt in correcting the fact, and content in the notice given; and must offer to restore possession of the property, and offer to put the parties in *statu quo*. The question is not now an open one. Grundy v. Boyce's exr. 3 Pet. (U. S. S. C. R.) 201; Pentaw v. Martin et al. 1 S. & M. Ch. 134; Johnson v. Jones, 13 S. & M. 583; Dunlap v. Peters'

exr. 35 Miss, 590; Jones et al. v. Smith et al. 33 ib. 215; Taylor v. Longworth, 14 Pet. 172.

The second point made is not applicable to the case at all. This is not a proceeding to make Bratton personally liable for the debt at all. He could not rescind the contract as against Dobbins. Besides, appellants acquired the paper upon maturity, extended credit on the faith of it, and after Bratton had waived the fraud by his negotiations with Dobbins in 1861 and 1862. Wormly v. Story, 1 Humph. 470.

*White & Chalmers,* for appellees.

Two cases are consolidated in this record into one.

T. H. & J. M. Allen & Co. filed their bill in chancery court of Coahoma county, alleging that Archibald Dobbins, being indebted to them in a large amount, had transferred to them, as collateral security, a certain land note made by Bratton to Dobbins, as part of the purchase price of a tract of land in Coahoma county, which Dobbins had sold by title bond to Bratton. They prayed that Dobbins and Bratton might be decreed to pay the amounts due upon their respective notes, and that in default thereof, the land might be sold.

The Crescent City Bank of New Orleans came in and asked to be made a party, which, being allowed, it filed its answer and cross-bill, in which it alleged that it was also a holder of one of the series of notes made by Bratton for the purchase money of said land, and therefore they united in the prayer of T. H. & J. M. Allen & Co., that the land might be sold to pay the amounts due on said notes. They alleged that they were purchasers for value of said notes in the city of New Orleans.

Dobbins answered, admitting the allegations of the bill of Allen & Co., but setting up that so far as the notes of Bratton to himself were concerned, they were

not yet due, because of a stipulation in the title bond that they were not to become due so long as the land continued to be overflowed by the Mississippi river, and alleged that the land had been so overflowed each successive year since the notes were made.

Bratton answered, setting up that in the original sale of the land to him by Dobbins, he had been grossly swindled, first by Dobbins' representations that the land did not overflow; second, by his representations that he had a good title to the land.    So far from this latter allegation being true, he showed that Dobbins had no title whatever to far the largest and most valuable portion of the land; that Dobbins was hopelessly insolvent; was utterly unable to procure the title to the land; was reckless and dissipated, and had avowed both his inability of procuring and making said title, and his intention not to attempt to do so. Bratton denied that Allen & Co., or the bank, were purchasers of his notes for value, and asserted that they were bound by all the equities between himself and Dobbins.

He made his answer a cross-bill as to all the parties; he prayed a cancellation of the trade between Dobbins and himself, and for a lien on that portion of the land to which Dobbins had a good title for the cash payments which he had made and for his valuable improvements.    He prayed that the notes in the possession of Allen & Co., and the Crescent City Bank, might be delivered up for cancellation.

While this litigation was progressing, Bratton filed his bill in the same court against Dobbins, Allen & Co., and the Crescent City Bank setting up the same facts already pleaded in his answer in the former suit, and praying the same relief, to wit: a cancellation of the trade, and a lien for cash payments and improvements, and a cancellation of his outstanding notes in the hands of the bank and of Allen & Co.

To this bill Allen & Co. and the bank filed separate answers, setting up the same matters originally contained in their bill and cross-bill in the former suit. They set up further that the notes which they held against Bratton were strictly commercial paper, executed and payable in Memphis, Tenn., and governed by the principles of the law merchant, and that therefore they were not bound by the equities between the original parties.

The two cases were consolidated and tried together.

There was no proof in the case except the testimony of Bratton, taken in open court, and that of Julius Allen, a witness for Bratton.

Bratton swore substantially and minutely to all the allegations contained in his pleadings, as to the fraud practiced on him in the trade; as to the failure of title, and as to Dobbins' insolvency, and his declarations that he could not make title to the land, and never intended to try.

Allen swore to Dobbins' hopeless insolvency, and abundantly proved the failure of title to far the largest and most valuable portion of the land, it appearing that a portion of the land belonged to the witness himself, and was in his actual possession.

The court decreed a cancellation of the trade, the surrender of the notes in the hands of Allen & Co. and the Crescent City Bank, and a lien on that portion of the land to which Dobbins had title for the cash payment, and a sale therefor.

It is respectfully submitted that the decree of the chancellor is correct in every particular.

The allegations in Bratton's pleadings are ample to justify rescission of the contract of purchase, and are fully sustained by the proof.

There was an utter failure of title for the larger portion of the land, and actual eviction as to much of the most valuable part of it. Dobbins was totally in-

solvent, and neither had the desire, the intention, even the ability to perfect the title. That under such circumstances Bratton was entitled to a rescission of the contract, and a lien on that part of the land to which there was good title, is too plain for argument. We quote the following authorities:

Liddell v. Sims, 9 S. & M. 596; Parham v. Randolph, 4 How. (Miss.) 435; English v. Benedict, 25 Miss. 167; York v. Gregg, 9 Tex. 85; Smith v. Robertson, 23 Ala. 312; Bryant v. Booth, 30 ib. 311.

Allen & Co. and the Crescent City Bank were bound by all the equities between the original parties. Of course they were so bound by the anti-commercial laws of Mississippi. They were, under the circumstances, equally bound by those equities under the laws of Tennessee, where the notes were executed and made payable.

The note held by the Crescent City Bank was due and payable on November 10th, 1863. It was bought by the bank on 2nd May, 1866. It was therefore past due when bought.

In order for the holder of negotiable paper to escape the equities between the parties, it is, of course, necessary that it must be bought before maturity. This is the very cardinal principle, the foundation stone of the whole system of commercial law. It is the law of all states and all countries, and needs no citations. The principle of the negotiability of such paper is never stated by any court, or by any text writer, anywhere without the restriction that in order to enable the purchaser to escape the original equities it must be obtained for value, without notice, before maturity.

Allen & Co. are equally bound by the equities, because they received it as collateral security for an antecedent debt. They allege that in consequence of it they gave extension of time on the antecedent debt.

In some of the states this would constitute them *bona*

· *fide* holders for value. Not so in Tennessee, by the laws of which their rights must be decided. It is well settled in Tennessee, by a series of decisions, that not only is the giving of time upon the receipt of collateral insufficient to make the holder of the collateral a holder for the value, but that even the complete payment and extinguishment of the antecedent debt will not have that effect. In order for the holder to defeat the original equities he must pay a present consideration in money or property. No antecedent debt will do. This is in accordance with our own decisions. Pope v. Pope, 40 Miss. 516; Swank v. Perkins et al. 43 ib. 349; Kimbro v. Lytle, 10 Yerg. 417; Nicholas v. Hill et al. 10 ib. 429; Wormly v. Lowry, 1 Humph. 468; Van Wyck v. Union Bank, 2 ib. 192; Ingham v. Vaden, 3 ib. 51; Ingham v. Morgan, 4 ib. 66; Vatterlein v. Howell, 5 Sneed, 441; Rhea v. Allison, 3 Head, 176.

PEYTON, C. J.:

On the 10th day of November, 1860, Archibald S. Dobbins, sold to Samuel E. Bratton, a certain tract of land, situated in Coahoma county, containing about 1,180 acres, for the sum of $30,000, of which $8,000 were paid at the time of the sale, and for the balance the said Bratton executed his three promissory notes to the said Dobbins, of that date, for $7,333.33 each, payable one, two, and three years thereafter, with 6 per cent interest per annum. And at the same time, the said Dobbins delivered to said Bratton a bond to make him a title to said land when said notes were paid.

The said Archibald S. Dobbins being indebted to T. H. & J. M. Allen & Co., indorsed and delivered one of said notes to said T. H. & J. M. Allen & Co. as collateral security for said antecedent indebtedness, the date of which is not disclosed by the record.

It also appears that the Crescent City Bank of Lousiana became the owner of another one of said notes, on

the 2nd day of May, 1866, by purchase, in the city of New Orleans, as commercial paper.

After a variety of pleadings, by bills and answers, the cause was finally disposed of in the court below, upon the bill of Samuel E. Bratton to rescind the contract of sale, on the ground of fraud in obtaining it, and for want of title to a large portion of the land, and on the answers of T. H. & J. M. Allen & Co., and of the Crescent City Bank of Louisiana, the exhibits and proofs. The court decree a rescission of the contract, and that the bond for title, and the said notes, given for the land as aforesaid, be canceled and annulled, and that an account be taken of the amount paid by said Bratton to said Dobbins, which is declared to be a lien on said land, and if not paid by said Dobbins, the said lands, or so much as may be necessary, to be sold to pay the amount that may be due the complainant Bratton, hence the case came to this court by appeal.

This decree is believed to be unimpeachable, unless T. H. & J. M. Allen & Co., and the Crescent City Bank occupy such a position under the Law Merchant, as holders of two of these notes, as will protect them against the equities existing between the original parties thereto. And to the consideration of this interesting question we will now address ourselves.

T. H. & J. M. Allen & Co., in their answer to the bill of complaint, allege that the said Archibald S. Dobbins, being largely indebted to them, indorsed and delivered to them one of said notes, due in November, 1862, as collateral security for such indebtedness. But when that was done we are not informed, whether it was before or after the maturity of this note. This circumstance, however, can make no difference in their case under the law of Tennessee, where said notes were dated and made payable. For if the note was indorsed and delivered to them after its maturity, they took it, under the general commercial law, subject to the equi-

ties existing between the original parties, and if they received it before its maturity, and held it as collateral security for an antecedent debt, they stand in no better situation than the payee, and would be subject to all the defences which might be made against it in the hands of the payee.

As the notes were executed and to be paid in Tennessee, they are to be governed by the laws of that state, and upon questions connected with commercial paper, it is there well settled that the suspension or satisfaction of a precedent debt is not a sufficient consideration to give the assignee or indorsee of a bill or note the position of a *bona fide* purchaser, as against prior equities. The reason given is, that where a party receives a note or bill for a pre-existing debt, due from the person only who assigns the note or bill, he parts with nothing. He has given for it neither his money, goods nor credits, nor has he, on account of it, sustained a loss or incurred any liability. Rhea v. Allison, 3 Head, 179. In that case the court admits that a different rule is laid down in most of the states, and by the supreme court of the United States, in the case of Swift v. Tyson, 16 Pet. 1.

In the case of Valterlain v. Howell, 5 Sneed, 443, it was held that if a note is taken in payment of or as collateral security for a pre-existing debt, it is not negotiated in due course of trade, and the holder would stand in no better situation than the payee, and would be subject to all the equities existing between the original parties. Nichols v. Hill, 10 Yerg. 429; Ingham v. Vaden, 3 Humph. 51; Ingram v. Morgan, 4 ib. 66.

The note held by the Crescent City Bank was due in November, 1863, and was purchased by said bank in New Orleans, on the 2d day of May, 1866. It thus appears that the note was overdue when purchased by the bank, which took it with notice on its face that it was discredited, and therefore subject to all the equi-

ties existing between the original parties. There can be no doubt that, at common law, the holder of a negotiable bill or note, who receives it from the payee after it falls due, takes it subject to all defences which attach to the note or bill in hands of the indorser.

It was at first doubted whether a bill or note, overdue, could be so negotiated as to enable the indorsee to sue on it in his own name. But, upon the opinion of merchants, the court of king's bench decided such action would lie. Mitford v. Wallicot, 1 Salk. 129. But in Brown v. Davies, 3 T. R. 80, and Tayler v. Mathew, ib. 84, it was expressly decided that the indorsee in such case takes the bill or note subject to all defenses. This is the well settled doctrine of the common law, and the recent American cases hold substantially the same doctrine. Barlow v. Scott, 12 Iowa, 63; 10 ib. 208. All defences, as between the original parties, so far as the note is concerned, are equally available against the indorsee, who receives the paper when overdue. Bates v. Kemp, 12 Iowa, 99.

In the case under consideration we think the fraud of the vendor in respect to the overflow and title to a valuable part of the land, together with the insolvency of the debtor, entitles the vendee to a rescission of the contract of sale, and to a repayment of the money advanced upon it. Misrepresentation in obtaining a bargain is, in equity, a ground for setting aside a conveyance by which it was consummated. McAllister v. Barry, 2 Hayw. 190; Boyce's Executors v. Grundy, 3 Pet. 210.

In the case of a purchase of land, where the title in part fails, the court of chancery will decree a return of the purchase money, even after the purchase has been carried completely into execution, by the delivery of the deed and payment of the money, provided there had been a fraudulent misrepresentation as to the title. Edwards v. McLeag, Cooper's Eq. 308; Fenton v.

Brown, 14 Vesey, 144; 2 Kent, 610, top page.   But in case the vendor be perfectly solvent, and there be no ingredient of fraud, and the purchaser is not evicted, the insolvency of the title is no ground for relief against a security given for the purchase money, or for rescinding the purchase, and claiming restitution of the money. The party is remitted to his remedies at law, upon the covenants in his deeds.   2 Kent, 620, top page.

Upon the whole we can perceive no error in the action af the court below.

*The decree will, therefore, be affirmed.*