Sullivan,  }
July 4, 1901.  }

### LIMERICK NATIONAL BANK *v.* HOWARD & *a.*

In an action by an indorsee against the maker of a promissory note payable in Vermont, the question whether the plaintiff's knowledge of the payee's fraud in obtaining the note was of such a character as to constitute a valid defence is governed by the construction of the contract adopted in that state.

ASSUMPSIT, upon three promissory notes, signed by the defendants, payable to one Reynolds or bearer at a bank in White River Junction, Vermont. Transferred from the May term, 1900, of the supreme court by *Chase,* J. Trial by jury.

The plaintiffs' evidence tended to show that they discounted the notes for Reynolds, who indorsed them in blank, before maturity, and for value. The defendants offered evidence to show that Reynolds induced them to sign the notes by fraud. This was excluded, subject to the defendants' exception. The plaintiffs' evidence showed that at the time of the indorsement they had no actual knowledge that the notes were obtained by fraud, but it tended to show that the plaintiffs had knowledge of such facts and circumstances as would lead a careful and prudent man to suspect that they were procured by fraud. Upon this evidence the defendants claimed that the question of fraud should be submitted to the jury. This claim it is admitted is substantially in accordance with the law as held in Vermont. The court ordered a verdict for the plaintiffs, and the defendants excepted. At the adjourned law term of the supreme court in March, 1901, the court ordered the verdict set aside. Thereupon the plaintiffs filed a motion for a rehearing.

*Eastman & Hollis* and *Burt Chellis,* for the plaintiffs.

*Hosea W. Parker, Ira Colby & Son,* and *R. M. Harvey* (of Vermont), for the defendants.

WALKER, J.   Assuming that the notes were obtained by Rey-
nolds, the payee, through fraud practiced upon the defendants, the
court at the trial, in effect, ruled that there was no competent evi-
dence that the plaintiff had knowledge of the fraud at the time it
took the notes, or that it was not a *bona fide* holder.  This result
was reached presumably by applying the doctrine of this state:
that mere suspicion of facts, which would be a defence to a note
in the hands of the payee, is not notice of, and does not put the
indorsee upon inquiry as to, such facts.   *Green* v. *Bickford*, 60
N. H. 159.   On the other hand, if the law of Vermont, where the
notes were payable, had been applied, it is conceded that the oppo-
site result would have been reached, and the jury would have been
instructed that upon the evidence it was material for them to find
whether the plaintiff took the notes "without knowledge of facts
and circumstances that would lead a careful and prudent man to
suspect that the paper was invalid as between antecedent parties"
(*Limerick Nat'l Bank* v. *Adams*, 70 Vt. 132, 142), on account of
the fraud practiced by the payee upon the defendants.   It is ad-
mitted by both parties that this is a correct statement of the law
of that state upon this subject.   The good faith universally re-
quired of an indorsee when the maker raises the defence of fraud
is a question for the jury in Vermont, in case there is evidence
tending to show that reasonably prudent men, in the same situ-
ation with reference to the facts and circumstances, would have
suspected the existence of the prior fraud.   The knowledge of
such suspicious facts and circumstances puts him upon inquiry,
and he is chargeable with the knowledge of such fraud by the
payee as careful inquiry would have disclosed.   It is quite imma-
terial whether this proposition of law is, or is not, sustained by
authorities in other jurisdictions, or whether it is, or is not,
founded upon correct principle.   It is also unnecessary to insti-
tute an inquiry into the relative merits of the conflicting decisions
upon this subject in this state and in Vermont.

The material question is whether the law of the place of the
contract — the place where the contract was to be performed — or
the law of the forum shall determine the validity of the ruling
ordering a verdict for the plaintiff.   Does the question whether
the plaintiff was a *bona fide* holder of the notes relate solely to the
remedy and the procedure employed for the enforcement of the
contract?   If it does, the law of this state upon that subject must
prevail.   But if the contractual rights and obligations of the par-
ties are substantially involved, whether they are made to appear
on the pleadings or in the evidence adduced, it is equally clear
that the question must be determined by the law of Vermont.   A
citation of authorities in support of these general propositions is

unnecessary. They are elementary. *New York Life Ins. Co.* v. *McKellar*, 68 N. H. 326.

The principal issue in the case was whether the plaintiff was a *bona fide* holder of the notes. If it was not such a holder, evidence of fraud which would be a defence in an action in favor of the payee would be admissible in an action of this character in both jurisdictions. This proposition, which is not controverted, states with sufficient exactness the principal ground of defence relied upon by the defendants; and while it is not inaccurate to say that, upon the plaintiff's evidence and the evidence offered by the defendants, the question is whether a finding that the plaintiff was not a *bona fide* holder could be supported,— that is, whether all the evidence is sufficient for that purpose,— that method of stating the question is liable to be misleading, and to suggest, in the first instance, that nothing is involved but matters relating solely to the remedy. If the expression "*bona fide* holder" had exactly the same legal meaning in New Hampshire as in Vermont, it is not unlikely that this case might present nothing but a question of the sufficiency of evidence, which the law of the forum would ordinarily determine. Whar. Conf. Laws, *s.* 752. The assumption that that expression has the same meaning in all common-law jurisdictions is contrary to the fact. Tied. Com. Pap., *s.* 289. It is apparent, therefore, that before any question of the sufficiency of the evidence or the nature of the remedy can arise, the terms of the contract offered in evidence must be determined and fully understood. What are the contractual rights and obligations of the parties, is a fundamental inquiry which "must generally be settled before any question of remedy arises." *Carnegie* v. *Morrison*, 2 Met. 381, 397.

This inquiry may properly be made upon the pleadings, if sufficiently specific, or, as in this case, upon the evidence. The plaintiff, as an indorsee of the notes, seeks to recover the amount due from the makers. The defendants, admitting the execution of the notes so far as this particular defence is concerned, say that the notes were obtained by the fraud of the payee; the plaintiff replies that it gave full value for the notes without actual knowledge of the fraud claimed by the defendants, and is therefore a *bona fide* holder; the defendants rejoin that the plaintiff had knowledge at the time it took the notes of such facts as would lead a prudent man to suspect that they were obtained by fraud, and therefore it is not a *bona fide* holder. This formal manner of stating the respective claims of the parties shows plainly that they are at issue over the definition of a term necessarily involved in the contract; and until this issue is determined the rights of the parties under their contract must remain obscure and doubtful.

The solution of this question depends primarily upon the legitimate ascertainment of the intention of the parties; and as it is plain, as a legal proposition, that the contract was made in view of the law of Vermont, it follows that the parties in effect embodied the law of that state in their contract, and thereby furnished the evidence from which their understanding of the meaning of "*bona fide* holder" must be ascertained.

If the defendants had expressly stipulated in the notes that they were not payable to any indorsee, even for value and before maturity, who at the time of the indorsement should have a reasonable suspicion of the fact that the payee obtained them by fraud, the defendants' intention in this respect would not be more clearly expressed than it is by the payee's blank indorsement of the notes to the plaintiff. The defendants intended to subject themselves to such contractual liabilities and such only, and the plaintiff intended to assume as indorsee such contractual duties and such only, as are involved in the construction of a blank indorsement of a negotiable promissory note by the law, not of New Hampshire, but of Vermont. It is the law of the latter state that defines and interprets the contract which is imperfectly evidenced by the payee's blank indorsement; and the good faith of the indorsee, admittedly an essential condition of the defendants' liability in case the payee fraudulently induced them to sign the notes, is such a degree of good faith as the parties intended, and their intention in this respect is ascertained by the decisions and law of the state in view of which the abbreviated form of contract was made. *Howard* v. *Fletcher*, 59 N. H. 151; *Emery* v. *Clough*, 63 N. H. 552.

"But whenever any question, apparently pertaining to the remedy, raises an inquiry into the nature and validity of the substantive rights of the parties to the contract, then it is to be determined by the law of the place where the contract was made or to be performed, and not by the law of the forum." Tied. Com. Pap., s. 506. "So the effect of the transaction in fixing the relations of the parties is, as between them, determined by the *lex loci contractus*. Thus, if by the *lex loci contractus* the purchaser acquires the note as a *bona fide* holder, not subject to the defence of a prior payment, such payment cannot be pleaded; although the *lex fori* would permit it. And whether or not the proprietor of the bill or note is a *bona fide* holder, is to be determined by the *lex loci contractus*." Dan. Neg. Ins., s. 889. "Again, the *lex loci contractus*, and not the *lex fori*, determines whether a *bona fide* holder before maturity should be subject to a defence available against a prior holder." Rand. Com. Pap., s. 50. "So, if by the law of the place of the contract, even although negotiable, equitable defences

are allowed in favor of the maker, any subsequent indorsement will not change his right in regard to the holder. The latter must take it *cum onere."* Sto. Conf. Laws, s. 332. See, also, *Pritchard* v. *Norton,* 106 U. S. 124, 129; *Allen* v. *Bratton,* 47 Miss. 119; *Woodruff* v. *Hill,* 116 Mass. 310; *Baxter Nat'l Bank* v. *Talbot,* 154 Mass. 213; *Harrison* v. *Edwards,* 12 Vt. 648.

When it is ascertained what the contract was, by applying the construction adopted at the place where the contract was made or where it was to be performed, an inquiry may arise as to the sufficiency or the competency of the evidence offered in its support, or as to the form of the remedy adopted. Such a question is ordinarily decided according to the law of the forum. Public policy and the due and uniform administration of justice require that local methods of procedure shall not be suspended in actions for the enforcement and vindication, by comity, of obligations incurred in foreign jurisdictions. An agreement that the contractual rights of the parties should be enforced by the form of procedure and proved by evidence permitted only in some foreign country, could not be enforced in this state. If by the common law an action of covenant could only be sustained upon a contract executed with an adhesive seal, parties could not adopt a scroll or other mark, call it a seal, and sustain covenant upon their contract. *Douglas* v. *Oldham,* 6 N. H. 150; *Steele* v. *Curle,* 4 Dana 381. In *LeRoy* v. *Beard,* 8 How. 451, 465, the court say: " We hold this, too, without impairing at all the principle that in deciding on the obligation of the instrument as a contract, and not the remedy on it elsewhere, the law of Wisconsin, as the *lex loci contractus,* must govern."

It is insisted that decisions relating to the effect of the statute of limitations upon the rights of parties furnish by analogy a strong argument in support of the plaintiff's contention. But the fallacy of the argument consists in overlooking the apparent fact that the statute of limitations presupposes a valid, subsisting contract. The construction of the terms of the contract does not depend upon the statute and is not affected thereby; and a holding that the statute relates to the remedy furnishes no reason for holding that the duties of an indorsee of a note are not an essential part of the contract between him and the maker.

In *Downer* v. *Cheseborough,* 36 Conn. 39, the plaintiff was an indorsee of a note, indorsed in New York, where parol evidence is not admissible for the purpose of showing a different contract than that implied by law. In Connecticut such evidence is admissible for that purpose. The court held that as the law of New York did not declare the oral contract void, but merely refused to afford the parties a remedy for its enforcement, having an effect

similar to that of the statute of frauds in most cases (Wood Fr., s. 166), the plaintiff was entitled to the advantage of the Connecticut rule. Whether this decision is in all respects a correct application of legal principles, it is unnecessary to inquire. It is sufficient to note that it does not sustain the plaintiff's contention in this case. It did not attempt to change the contract, but afforded a liberal means for its enforcement. It did not permit the defendant, while admitting the contract, to say in effect that there was an implied agreement that it should not be enforced. It did not allow the defendant to prescribe the rules of evidence by which his undertaking should be avoided. In analogy to the statute of frauds, the court merely held that the question presented related to the remedy and not to the construction, interpretation, or effect of the contract. In this case the question is, not whether the evidence adduced is competent to prove the alleged contract, but what was the contract? In other words, what duties under the contract rested upon the plaintiff in reference to antecedent fraud when it purchased the note? And no question of the competency or sufficiency of the evidence is presented.

Whether the defendants at the time of signing the note, or the plaintiff at the time of the indorsement, actually had in mind the exact conditions attached to their contract by the decisions in Vermont, or whether they ever had such knowledge, is unimportant. As a matter of well-settled law, it is conclusively presumed that they intended to make a contract which should be construed in accordance with the commercial law of that state. When that law is ascertained in some legitimate way, as by the admission of the parties, as in this case, their contractual rights and duties are as apparent as though they had been explicitly specified in the note. The promise of the makers to pay the amount of the note to the payee or order is not an unconditional obligation. If the note was given for the accommodation of the payee and remains in his hands, it is of no effect. If it was obtained by the payee's fraud, the latter cannot enforce the maker's promise; or if, in such a case, the note has been transferred for value to an indorsee who is not a *bona fide* holder, because he took the note after maturity, or because he knew of the antecedent fraud, the maker may avoid the apparent effect of his promise. That is, the law, seeking to carry out the intention of the parties, by construction renders the maker's promise conditional, which literally is unconditional and absolute. One condition of the note in suit was that in case it should be shown that the payee obtained the note by fraud, an indorsee, even for value and before maturity, should not be regarded as an innocent holder if he had knowledge of such facts as would lead a reasonably prudent man to suspect that the payee

had been guilty of the fraud charged. To adopt some other construction, and attach to the contract some other conditions in the place of this one, would be to thwart the intention of the parties and to abrogate the well-established principle that the *lex loci contractus* determines the nature and effect of contracts.

If it is held by the federal courts that the doctrine of *lex loci contractus* does not apply to the contract evidenced by the indorsement of a negotiable promissory note, but that it is to be interpreted by the principles of a general commercial law, as contradistinguished from the principles of the law of contracts as established in the state where the note was made and was to be paid (*Swift* v. *Tyson,* 16 Pet. 1; *Oates* v. *Bank,* 100 U. S. 239; *Railroad Co.* v. *Bank,* 102 U. S. 14; *Bank of Edgefield* v. *Company,* 2 U. S. App. 282), the exceptional doctrine thus indicated cannot be adopted in this case. While it is doubtless competent for the supreme court of the United States, in a case before it, to determine the law governing the interpretation of Vermont contracts without regard to the decisions applicable in that state, it would be little less than usurpation for this court to decide in this case what, in its opinion, ought to be the commercial law of Vermont. The general doctrine of comity between the states, which is universally recognized, does not lead to a result so inconsistent and contradictory. There is no evidence that the parties intended to incorporate into their contract any other law than the general commercial law applicable thereto, as established in the state of Vermont and proved here by the admission of the parties.

The result reached renders it unnecessary to consider other questions argued by counsel.

*Motion for rehearing denied.*

CHASE, J., did not sit : the others concurred.