## A. J. Wooten *v.* Geo. M. Buchanan *et al.*

1. VOLUNTARY PAYMENT—How APPLIED.—A debtor making a voluntary payment, may direct to what debt (if there be more than one) the credit shall be applied. If he gives no direction, the creditor may make the appropriation. If both omit it, the law will apply. United States v. Kirkpatrick, 9 Wheat., 737; Patterson v. Hill, 7 Cow. Rep., 747, note 6.

2. SAME.—This principle is not applicable where payment is enforced by process of law, or *in invitum.* Blackstone's Bank v. Hill, 10 Pick., 133; Bennett v. Lewis, 2 Pick., 125, note.

3. MONEY RAISED BY SALE OF MORTGAGED PROPERTY—How APPLIED.—Where there are several notes secured by a mortgage, and all the notes are due, the money arising from the sale of the mortgaged property should be applied ratably to the several notes secured by the instrument. And this, whether there has been a judgment at law, obtained upon one of the notes. Parker v. Mercer, 6 How. R., 323; Cage v. Iler, 5 S. & M., 420.

4. Courts of equity will take no steps for relief of sureties which would be injurious to the creditor.

5. PURCHASER FROM SURETY.—Purchaser from a surety whose property is under a lien, takes his place, and is substituted to all his rights and equities.

6. Rights of a Surety.—The only equity which a surety has when his land is levied upon, is to force his creditor to exhaust the security that the principal debtor had made on his property, before a sale of property of surety.

7. Relief of Surety in Court of Equity.—The postponement of process upon a judgment against sureties, until after the property of the principal debtor had been exhausted and applied to the debt, is what a court of equity would do at the suit of a surety.

8. Case in Judgment.—Money arising from foreclosure of vendor's lien, the law applies ratably to all the notes, although there may be different sureties upon the notes and judgment against one and not against the others. Under such circumstances, the creditor cannot make the application.

Appeal from the chancery court of Marshall county. Hon. DeWitt Stearns, Chancellor.

The opinion of the court contains a sufficient statement of the case.

*Watson & Manning*, for appellant:

The general doctrine as to the appropriation of payments, is, that the debtor has the right at the time, no previous contract intervening, to apply the payment as he pleases; if he fails to apply it, and there is no previous contract, the creditor can apply it, provided he exercises his right of application before controversy arises; and if both neglect to apply it, then the law will apply it according to justice and well settled principles of its own. 5 Gilman, 449, 8 Md., 73; 4 Minn., 278; 18 Tex., 63; 2 Ala., 246; 1 Dan., 146.

If the judgment debtor has no right to apply money raised by process of law, then the judgment creditor has no such right, for the right of the creditor to make appropriation springs from the neglect or refusal of the debtor to make such appropriation, and exists only where the debtor has, in fact, had an opportunity of application, but neglected to make it. 2 Pars. Con., 143. It is only the intent of the debtor, implied from his failure to act, that confers at all on the creditor the right of application. 1 Story, Eq. Jur., § 459.

If the general rule does not apply here, and neither of the parties has the right to apply, then the court will make the application as the law and justice dictate. 10 Pick., 129; 18 Vt., 451; 9 Wheat., 720; Miller v. Leflore *et al.*, 32 Miss.,

634; 11 Gratt., 86. If the creditors fail to apply the payment according to reason and justice, the law will interfere and appropriate it to the proper contract. Ib.; 15 Barb., 76; 17 Ind., 399; 1 Beasley, 233, 312; 33 Pa., (st.) 151; 14 B. Mon., 348; 29 Ga., 152; 1 Story, Eq. Jur., 459.

At all events the money arising from the sale should have been applied to the satisfaction of the oldest judgment. 23 Miss., 392; 4 Ga., 356; 1 Leigh., 140; 2 ib., 268–289; 15 Vesey, 353; 2 John. Ch., 607; Goodman v. Anderson *et al.*, 5 S. & M., 744; 24 Miss., 98; 1 Sanf., 416; 10 N..H., 29; 32 Barb., 9.

*Featherston, Harris & Watson*, for appellees:

Insisted that the decree of the Chancellor was correct, and should be affirmed. Citing Payne v. Harrell, 40 Miss., 498; 2 S. & M., 697; 5 ib., 662; 5 Johns., 677; 8 S. & M., 357; Freem. Ch., 419; 38 Miss., 633; 1 Story, Eq. Jur., §§ 553, 554, 558, 568; 10 S. & M., 113; 13 ib., 522.

SIMRALL, J., delivered the opinion of the court:

In October, 1868, Robert Bowen, sold and conveyed to Clement R. Jameson, the parcel of land, described in the pleadings, containing 565 acres. For the purchase money, Jameson made his three bills single, or bonds, payable at one, two and three years, with W. H. Jameson and Jesse W. Wooten, as his sureties. The vendor, Bowen, died shortly after the sale. In 1860, Wm. A. Hancock, his administrator, recovered a judgment at law, against all the parties payees of the first note, for $1245.20. An execution founded upon this judgment was, in 1866, levied upon the land sold to complainant by Jesse Wooten, but no sale was made. In 1867, Hancock, administrator, recovered a judgment on the other two bonds for the aggregate sum of $5088.07. Execution upon this judgment was returned "*nulla bona.*"

Hancock, the administrator, with his heirs at law, then filed a bill in chancery, to subject the land to the lien for the purchase money, a decree was pronounced.for a sale, and

a sale was made by Geo. B. Meyers, a commissioner; the sum realized by the sale came short of paying off the entire debt, as embraced in the two judgments, by something over $1000.00. The money thus raised, was applied by the commissioner to the satisfaction of the last judgment founded on the bills single, or bonds, representing the two last installments, and the excess credited to the first judgment.

An execution emanating from the judgment recovered in 1860, was levied for the balance of about $1000.00, upon a tract of land which in 1860, belonged to Jesse W. Wooten, one of the sureties on the bonds, and a party defendant in that judgment. After 1860, and after the recovery of the last mentioned judgment, Andrew J. Wooten purchased *bona fide*, and for value, from Jesse Wooten, this tract of land, and filed this bill, to perpetually enjoin Hancock, the administrator, from selling the same under the judgment. At the commissioner's sale the appellant, Andrew Wooten, and his vendor, Jesse Wooten, notified the commissioner and administrator, Hancock, that they required that the proceeds of the sale should be applied to satisfy first the judgment recovered in 1860. The administrator and heirs of Bowen, insisted that the last judgment, obtained in 1866, should be first paid.

Upon the demurrer of the defendants, the bill was dismissed. In this court the appellant makes two questions; first, that the money ought to have been applied to satisfy the judgment of 1860, and the excess to the prior judgment, or, if mistaken in that—second, there should have been a *pro rata* distribution.

There is no doubt of the principle that a debtor making a voluntary payment may direct to what account or debt (if there be more than one), the credit shall be applied. If he gives no direction, the creditor may make the appropriation; if both omit it, the law will apply according to its own notions of justice. United States v. Kirkpatrick, 9 Wheat., 737; Patterson v. Hill, 7 Cow. Rep., 747. Note 6. The principle has no application to payments made or enforced by process

of law or *in invitum.* Blackstone's Bank v. Hill, 10 Pick., 133; Burritt v. Lewis, 2 Pick., 125; and note. For the debtor has not the power to control the application, and it would be unjust to permit the creditor to make it, when there is no corresponding right in the debtor to make an election.

Does the sale by the commissioner, under the decree, come within the last category? The lien which was enforced by the decree and sale, extended to the protection of the whole debt. It was as efficient as a security for the last installment as the first. When all the installments became due the last note had no merit over the first, which would suggest a superior claim to prior satisfaction. If either note had been held 'by an assignee, would it not have been inequitable to so marshal and distribute the fund, which was the common security of all, as to cut him out entirely, or satisfy him in full, or to give him less than an equal share?

The principle applicable to this case is illustrated in Parker v. Mercer, 6 How. Rep., 323. There the mortgage was to secure three notes, all of which were due. It was held that the security was equally for all of them. There it was claimed that the money should be applied to the note first due, upon which there was an accommodation endorser. There it was actually applied to the notes last due. In Cage v. Iler, 5 S. & M., 420, the money was raised by a sale under a deed of trust securing three promissory notes of $5,000.00 each. The trustee applied it to the payment of the last note. This was declared to be error. Referring to Parker v. Mercer, the court remarked that the case decided "that money arising from the sale of mortgaged premises should be applied ratably to the several notes secured by the instrument." Manifestly, neither the creditor nor debtor could interfere in the application of this money. It was produced by judicial process, *in invitum.* The law, assuming to point out how it shall go, distributes it equally and ratably among all the notes, all being over-due.

But the complainant sets up peculiar relations, connecting

him with the subject of the contestation, which demand for
his protection that the first bond, and judgment upon it,
should be satisfied, and the surplus paid on the others. He
purchased, in 1866, from the surety, Jesse Wooten, certain
lands, upon which the judgment recovered in 1860 was a lien.
He had positive notice of that lien. Hancock, the adminis-
trator, was proceeding to collect the balance claimed of the
judgment out of these lands. By the judgment, the creditor
had strengthened his security to the extent of the value of
the lien. The recovery of the judgment did not impair his
equity as vendor, or equitable mortgagee, as the case may
have been. The only equity which Jesse W. Wooten, the
surety, had when his land was levied upon, was to force his
creditor first to exhaust the security which the principal
debtor had made, before a sale of his property under the
judgment. If the principal had other property amenable to
process, that, also, could have been indicated as a primary
fund. But when these remedies were exhausted, the
creditor would be left free to make any deficit out of the
surety's property. A court of equity would have taken no
step for his relief which would have been injurious to the
creditor, or which would have deprived him of the judgment
lien, if it became ultimately necessary to avail of it to
obtain full satisfaction of his debt. Does the complainant,
by reason of his purchase of the property from the surety,
subject to the lien, acquire a better equity than his vendor
had ?

He has the clear right to point out other property of the
principal debtor, or of his vendor, if he can, and compel the
judgment creditor to satisfy his debt out of that. The
creditor has done nothing, or omitted nothing, of which the
complainant can justly find fault. The purchase from Jesse
Wooten was his voluntary act, with knowledge of the en-
cumbrance of the judgment. The postponement of process
upon the judgment of 1860 and 1866, against the sureties
on the bonds, until after the property of the principal

debtor, pledged by lien, had been sold and applied to the debt, was precisely what a court of equity would have insisted upon at the suit of a surety.

The complainant does not allege as reason why his property should be shielded; that the principal debtor, or his vendor, has property out of which the balance of the debt may be made. Nor is it shown that the creditor has done any act, which, in good conscience, should cause him to refrain from the exertion of all remedies to collect his debt.

The suit in chancery to foreclose the lien was a distinct remedy from the suits at law; both might have been instituted at the same time; the evidences to sustain the former were the deed creating the lien, and the bonds or bills single. The amount for which a decree should have been rendered, was the principal and interest due upon the bonds, and not necessarily the sums, with interest thereon, recovered in the actions at law. But whether the decree was predicated upon the amount due upon the judgments, or upon what was due for principal and interest upon the bonds, is a matter wholly immaterial in this case.

The complainant, by his purchase from Jesse Wooten, the surety, takes his place, and is substituted to his rights and equities as respects the property attempted to be sold under the judgment. If the contest is reduced to the question of the naked right to subject this land, the complainant cannot be relieved unless he can show some act or conduct of the creditor which would or ought to restrain him.

The only equity set up is a prior right to satisfy the judgment of 1860 out of the sale money. But we have seen that the rule of distribution was equality, ratably to the amounts, among all the notes. In Cage v. Iler (*supra*), as here, the trustee had *actually applied* the fund to the last note. That was error. The money as there applied, would have very seriously affected the rights of parties, who, (as in this case), had subsequently become interested and complicated with the original transaction. The direction which

was given to the money in this case, materially increased the burden upon the complainant's land. The proper distribution, that which the law would make, was upon the three bonds proportional to their amounts. The manner of the application was erroneous. The judgment creditor would have the right to satisfaction of the balance due upon the judgment recovered in 1860, out of the complainant's land, after an apportionment of the money raised by the chancery sale, as we have herein indicated.

The decree dismissing the bill is reversed, and cause remanded, with leave to the defendants to answer in forty days from this date.