### D. S. PATTISON, Exr., et al. v. H. H. PATTISON.

**Executor — Individual Payment.**

> Moneys paid by an executor as an individual to a creditor of the estate, who is also a personal creditor of the executor, are held to have been properly applied, at the discretion of the creditor, to the liquidation of the personal debt.

---

The debtor has the right at the time he makes a payment to appropriate it to whichever of several demands held against him by the creditor he pleases; if he fail to exercise this right then the creditor can appropriate the payment. Crisler v. McCoy, 33 Miss. 445.

If a party be indebted by mortgage and also by simple contract debts to the same creditor, and make a payment and omit to apply it specifically to one of the debts, the law will make the application in the way most beneficial to the debtor, viz.: to the mortgage. And so if the mortgagor sell the mortgaged property, and the purchaser pay the purchase money to the mortgagee, who has another debt against the mortgagor, the law will apply the payments made by the purchaser in exoneration of the mortgaged property. Poindexter v. LaRoche, 7 S. & M. 699.

A debtor owing several demands may, when he makes a partial payment, apply it to that demand which he sees proper. If he do not make an appropriation of the payment then the creditor may; and if neither make it the law will make the appropriation. And this right of the debtor to make the appropriation is not lost when the creditor obtains possession of his money without his consent, otherwise than by a judicial proceeding which is binding on the debtor. And it was recognized fully in a case where the

A petition was filed by H. H. Pattison, a creditor of the estate of Jane E. C. Pattison, to subject certain real estate of decedent to the payment of two judgments which she holds against the estate. The testator died July 17, 1873, leaving a will, making her husband executor, requiring no bond. The sole heirs were D. S. Pattison, husband, and Elizabeth Montgomery and Lucy Jeffries, children. The will was duly probated and executor qualified, but no publication for claims against the estate was made. R. E. Richardson recovered judgment in a suit at law against D. S. Pattison, executor, for $300, and John Burnett recovered a judgment for $236, both at the May term of the court, 1877, and both judgments were duly assigned to petitioner. On December 5, 1877, a payment was made of $108, and on December 12, 1883, $116.44 was paid on said judgments. The real estate sought to be subjected by petitioner was admitted not to have been covered in the will of testator. Defendants claim two additional credits on these judgments, one for five bales of cotton, amounting to $219, and one for seven bales' of cotton, amounting to $259.77, and claim full payment.

The evidence shows that the five bales of cotton were given to E. S. Drake, as attorney for R. E. Richardson, before the assignment by him to petitioner, and the cotton sold to one Kearney, who gave his draft on New Orleans for same. On the next day, said

creditor attached the debtor's money in the hands of his agent and forced the agent, in order to obtain a release of his own private funds from the same attachment, to agree that the money should be applied as the creditor desired. Dennis *v.* McLaurin & Co., 31 Miss. 606.

A party indebted on several accounts may, on making a payment, direct its appropriation. Champenois *v.* Fort, 45 Miss. 355.

In this State the rule of the civil law, which, in the absence of any appropriation by either debtor or creditor, appropriates payments most beneficially to the debtor, obtains. McLaughlin *v.* Green, 48 Miss. 175.

But the debtor owing several debts cannot invoke the principle that appropriation of payments are to be made in the manner most beneficial to him, if there is a course of business between him and his creditors from which an agreement will be implied that a different rule shall control. Gwin *v.* McLean, 62 Miss. 121.

The rule that a debtor making a voluntary payment may direct which of several debts the credit may be applied to, and if he gives no direction the creditor may make the application, and if both omit it the law will apply it, has no application where payment is enforced by process of law or *in invitum*. Wooten *v.* Buchanan, 49 Miss. 386.

Kearney recalled the draft from Drake, on the ground that the cotton was mortgaged, and defendant Pattison was so informed. Later defendant D. S. Pattison shipped to New Orleans, La., for account of H. H. Pattison, plaintiff, seven bales of cotton, netting $259, but this sum was applied on a prior debt due plaintiff by said D. S. Pattison. Upon this showing the chancellor sustained the petition and appointed a commissioner to render an accounting, which, when returned, showed a balance of $506. From this decree and commissioners' report, defendants appeal.

APPEALED from Chancery Court, Claiborne county, LAUCH McLAURIN, Chancellor.

Affirmed, May 25, 1885.

*Attorney for appellants, S. Thrasher.*

*Attorney for appellee, J. D. Vertner.*

Brief of S. Thrasher:

This is a petition filed by H. H. Pattison, a creditor of the estate of Jane E. C. Pattison, to subject certain real estate of the decedent for the payment of a couple of judgments which she holds against the estate. Code, § 2047.

The judgments were recovered at the May term, 1877, of the Circuit Court of Claiborne county against D. S. Pattison, executor of the estate; one in favor of R. E. Richardson for the sum of $300, at 6 per cent. interest, and the other in favor of John Burnet for the sum of $236, at 6 per cent. interest. Both these judgments were transferred and assigned to petitioner on January 1, 1878.

The first matter to which the attention of the court is called is the fact that the petition is unsworn and the answer is sworn to by E. R. Montgomery, one of the respondents. If we are to be governed by the rules that obtain in chancery, then all the matters in the answer responsive to the allegations in the petition are to be taken as true, unless they are controverted by one witness and strong corroborating circumstances, or by the testimony of two witnesses. Code, § 1949.

The theory of the defense in this case is that the judgments

have been fully paid, by payments made both before and after the 1st of January, 1878, the date of the assignment to the petitioner, as follows, to wit: That on the 23d November, 1877, there was paid on the Richardson judgment and costs the sum of $219, and that in December, 1877, there was paid on the same judgment the sum of $108. (This last payment is admitted by the petitioner.) That in January, 1879, there was paid to the executor the sum of $259.77, and in the fall of 1883 there was paid the sum of $142.78 (petitioner admits that in the fall of 1883 the sum of $116.44). These payments the appellants insist have fully paid and discharged the said judgments.

Col. Pattison testifies that on the 23d of November, 1877, he, as executor, sent five bales of cotton in town, Port Gibson, to Sheriff Buck, to be sold by him and the proceeds credited by him on the execution issued on the Richardson judgment. He further testifies that he obtained from Mr. Drake, the attorney of Richardson, a receipt for the proceeds of the cotton, to wit, the sum of $219. * * * and afterward in December, he, as executor, made another payment of $100 on the execution, which at the time he understood satisfied the Richardson judgment.

He further testifies that the transaction between Mr. Drake and Capt. Kearney, the purchaser of the cotton, whereby Drake gave up to Kearney his draft for $192.75, the proceeds of the cotton less the costs of suit, to-wit, $26.35, and seventy-five cents charges for weighing the cotton, was done in his absence and without his consent and knowledge. * * *

Both the executor and the heirs-at-law, who are sued herein, have an interest in having the proceeds of these five bales of cotton applied in payment of the debts of the estate, and neither they nor the executor were parties to this arrangement between Mr. Drake and Capt. Kearney. * * * Now these judgments were assigned to petitioner on January 1, 1878 after these payments were made, and if the petitioner suffers a loss it is her own fault, for both Pattison and E. R. Montgomery swear that she purchased them without their knowledge or solicitation, and that they knew nothing of the purchase until long afterward. * * *

It is claimed by the petitioner that D. S. Pattison owed her individually for assistance advanced him early in the year 1878, for his defense on a charge of homicide; this indebtedness, how-

ever, is emphatically denied both by the executor, Pattison, and his daughter. The proof shows that Pattison paid the petitioner the sum of $259.77 in January, 1879, and petitioner claims that the law ought to appropriate this money to what she claims as an individual indebtedness. All the circumstances go to show that Pattison appropriated this payment to the balance due on the judgment, though there is no proof that he directly informed the petitioner or her husband that he so applied it at the time it was made. The debtor has the undoubted right to appropriate at the time he makes the payment, and this fact can be shown by circumstances, and it need not be expressly declared by the debtor. Munger on the Applications of Payment, 24, 25, and authorities there cited under Rule 2.

Now the circumstances which are to show the fact of the appropriation by Pattison are, that he got this seven bales of cotton from one of the heirs to pay this judgment, and the fact that his daughter, one of the heirs-at-law, turned him over the cotton expressly to pay the judgments. The fact that he shipped the cotton as an executor, and the fact that he regarded the judgment as a lien on the land, and the further fact that he denies that he owed petitioner anything individually, etc., all these facts go to show what Pattison intended should be paid. * * *

Pattison being ignorant that petitioner claimed anything from him, individually, and knowing that he did not owe her anything, had no opportunity to appropriate the payment, but as he testifies, considering that he only owed the one debt, and that on the judgments, he shipped the seven bales of cotton for account of them. Hence, not knowing of any individual indebtedness claimed by the petitioner, he had no opportunity to make an application, and this he must have before he, or the court can appropriate. In this case it is not contended that the creditor made any appropriation of the payment. In this State we follow the rules of the civil law in regard to the appropriation of the payments, and the creditor cannot appropriate where one of the debts is controverted or disputed. Munger on Application of Payments, 5, 6; Art. 2, Text of the Civil Law.

An application by the creditor is not complete until the fact is communicated the debtor. Sawyer v. Tappan, 14 N. H. 352.

In this case the heirs are necessarily made parties, and they are in some sense sureties for the real estate which has descended to

them from the decedent, and which now belongs to them, and are responsible for the payment of the judgments; hence, according to the rules of the civil law, the law will appropriate the payment to the judgment. This is not only the rule of the civil law, but in a great many of the American cases, where the judges were disposed to follow the rules of the common law, they have applied the benefit in behalf of sureties and those who were bound for the debt. Stone *v.* Weymour, 15 Wend. 19.

The above case from Wendell is one where the court applied payments for the benefit of sureties.

The courts lay down the doctrine that in the absence of an appropriation by either of the parties, the law will apply it according to the equity and justice of the case. Poindexter *v.* La-Roche, 7 S. & M. 699.  *  *  *

Every case stands on its own peculiar, particular, and exclusive equities. From the whole tenor of petitioner's evidence, she seemed to look to these heirs for payment of the judgment; hence she was bound, according to her own statement, to so appropriate the payment as to injure them the least possible, and what she was compelled to do the law will certainly do.  *  *  *  .

In the case of Poindexter *v.* LaRoche, 7 S. & M. 699, the court uses this language: " When A. is indebted in bond and in judgment and sells his land, and the purchaser pays a sum of money to the creditor without application, the law will apply it to the judgment in exoneration of the land, page 713." Gwin et ux. *v.* Whittaker's Admx., 1 Harr. & J. 754.

To allow a decree of the court below to stand, and subject the real estate of the decedent now descended to these heirs-at-law for the payment of these judgments, would in the matter of the five bales of cotton in November 23, 1877, in effect compel these heirs to pay the private debt which the executor owed Capt. Kearney, and this, too, out of the assets of the estate; and, as I have said before, the court would be forcing the executor to commit a *devastavit.*

To refuse to appropriate the proceeds of the seven bales of cotton furnished by one of the heirs for the express purpose of paying on the judgments, would be to compel the heirs-at-law to pay the individual debt of their father. The law makes the application and will do it according to the dictates of justice. *  *  *

Brief of J. D. Vertner:

The only errors assigned which we deem it necessary to notice are the first and second, by which the appellants seek to charge appellee · with $192.75 + $259.77 = $452.52. If these errors could be sustained, the account on these judgments would appear as follows:

Two judgments rendered May term, 1877, aggregating $536.50, at 6 per cent. interest.

Payments thereon as follows:

November 23, 1877, $192.75; December 5, 1877, $108; January, 1879, $259.77; December 12, 1883, $116.44.

From which would result (by calculation of interest) that on December 12, 1883, when the last payment of $116.44 was made, *every dollar had been paid;* and yet $116.44 more than was due (according to appellants) was paid, *with a promise of making further payments* as soon as more cotton was on hand.

The fact is that D. S. Pattison owed the appellee two debts, one consisting of these judgments against him as executor, and the other consisting of moneys advanced him individually in 1878, to aid him in defending himself upon a charge of homicide.

The appellee had purchased the said judgments in January, 1878, so as to give time for their payment; and she was induced to their purchase (at par) not as a speculation, for they carried but 6 per cent. interest, but simply, as she testifies, out of consideration for her nieces, the daughters of D. S. Pattison. Prior to assignment only $108 had been paid on these judgments, and no payment was demanded on them until several years after their assignment, and the only payment then made was $116.44 in December, 1883, about five years after assignment. * * *

As to the claim of $192.75, as a credit on the judgment of Richardson, it appears that an execution was in hands of sheriff in November, 1877, upon which no levy or action was had. D. S. Pattison had five bales of cotton sold in Port Gibson in November, 1877, at private sale, which was bought by Capt. Kearney, merchant, who paid to E. S. Drake, attorney for Richardson, $26.35 in cash and gave his draft for balance of purchase money, $192.75. Mr. Drake, as he testifies, paid to the sheriff the costs, $26.35, and indorsed on the execution a receipt for $192.75 as in part of plaintiff's money. Subsequently, upon rumor of a mortgage upon the cotton, Capt. Kearney (who was the merchant

of D. S. Pattison) demanded back his draft, or had it held, and Mr. Drake had the sheriff to erase *in red ink* his receipt for purchase money.    *    *    *

In reply to the suggestion that these five bales of cotton were a payment for two estate mules — sold by Pattison as executor — we reply: First. That since the judgment creditor never received one dollar of the proceeds of this cotton, it is difficult to perceive the force of the suggestion; and second, that the answer of appellees avers that Pattison's testatrix left no personal property whatever, "except some household furniture and a carriage."

In answer to the second assignment of errors the court below held that the $259.77 was a payment on the individual debt of D. S. Pattison to the appellee and not on these judgments. Appellants deny any individual debt of D. S. Pattison to appellee, and argue that, even if any such were due, this sum of $259.77 should be applied by the court to the judgments. And thus arise the only two questions of any interest therein.

First. Did D. S. Pattison owe appellee any such individual debt? and second, If he did, how should the court apply this payment?    *    *    *

When Pattison was being prosecuted for homicide it became necessary to employ further counsel in his defense; after agreeing upon an attorney and the fee, he (D. S. Pattison), then confined to jail, asked a friend to see the husband of appellee and get him to arrange as to the fee: D. S. Pattison says that he knew his brother (appellee's husband) " was bankrupt " and " didn't own a dollar." It is not denied that his brother, acting under his (D. S. P.'s) request, arranged the fee of Judge Cassedy, paying him by appellee's draft on funds of her own $250, and D. S. Pattison admits that he got and used two of her drafts in his favor for $30 and $15, making $295 advanced early in 1878 for his account.

*    *    *    We submit that the seven bales of cotton from which this money came were shipped in response to the letters of appellee's husband, one of which was to D. S. Pattison and two to his daughter, all referring to this individual debt, and the one which appellee says was written to D. S. Pattison requested him to provide to pay this debt for moneys advanced by her.    *    *    *

But even admittting, *arguendo,* that there is no indication in the evidence as to how this payment was intended, still we submit

that, under the established rule of law in such cases, the court did not err in appropriating it to the individual debt, rather than to the debt on these judgments, due by him in his representative character as executor. Sawyer v. Tappan, 12 N. H. 357; Fowke v. Bowie, 4 Harr. & J. 366.

In Fowke v. Bowie, the instruction upon which a reversal was had was not condemned because it announced that where a debtor owed debts individually and representatively, the court in the absence of appropriation by the parties will apply it to the individual obligation; but the instruction was held vicious because it denied the right of the debtor to apply a payment to the representative in preference to the individual debt, if he so elected. 4 Minor Rule; Munger on Payments, 142–148; 1 S. & M. Ch. 331.

It will not be denied that D. S. Pattison could (in case he had not at the time of this payment applied it, and in case no application had been made by appellee or her husband for her) now invoke the court to have the payment in question appropriated to his individual debt. The court would not, however, so apply it, because he *now* might so request; for the court listens to neither party where there has been no appropriation at the time of payment. The court decides upon established rules.    *    *    *

OPINION.—PER CURIAM:

We concede the correctness of the rules of law contended for by the learned counsel for the appellants as applicable to the appropriation of payments, but still think the chancellor correctly held that the land should be sold to pay the claims of the appellee. It would be most unjust to make the proceeds of the five bales of cotton spoken of a credit on the debt due to the appellee; and the proceeds of the seven bales of cotton sent to New Orleans by the appellant, D. S. Pattison, were properly held to have been devoted to the individual indebtedness of D. S. Pattison to the appellee.

*Affirmed.*