Report confirmed subject to the establishment of any rights acquired by railroad companies.

---

HERMANN KOEHLER, Appellant, *v.* THE FARMERS AND DROVERS' NATIONAL BANK OF SOMERS, NEW YORK, and Others, Respondents.

*Stay of proceedings — collateral security to a loan — action on the obligation to secure which the collaterals have been deposited — not delayed to await the determination of the rights of other creditors to surplus proceeds thereof.*

Where a bank, which has discounted and is the holder of a promissory note, with which certain collaterals, furnished to the bank by the payee of the note, have been deposited to secure its payment, sues the accommodation maker (who, as between himself and the payee thereof, is a mere surety) upon such note, a stay of proceedings in such action will not be granted, pending the prosecution of another action brought by such maker of the note to secure the application of the collaterals, to the payment of the note (in his exoneration from liability thereon) and to determine the rights of certain other contesting parties, creditors of such payee, who claim to be entitled to protection and indemnification out of the proceeds of such collaterals.

An order made upon an application for such stay denying the application, upon condition that the bank stipulates to retain the collaterals or their proceeds in its possession for the payment of any claims thereon, to abide the event of the action brought by the maker of such note to determine such conflicting rights, will not be reversed on appeal.

The creditor should not, in such case, be delayed in the prosecution of its action until a determination is had of the disputes which have arisen between other parties, interested in the collaterals which it holds as security for the payment of the obligation owing to it.

*Semble,* that where the collaterals are readily available to the creditor, and can be applied by him without the settlement of any dispute as to the payment of indebtednesses existing in favor of third parties, with the same facility and certainty as in the action brought against such maker by the holder of the note, that the court will direct that disposition to be made of the securities in a case where the principal debtor is himself insolvent.

APPEAL from an order, made at the New York Special Term, vacating a stay of proceedings, on the defendant bank stipulating and agreeing to hold certain collaterals, or their proceeds, for the payment of the claims made thereon by certain parties, to abide the event of an action brought to determine such claims, which order was entered in the office of the clerk of the city and county of New York on May 4, 1888.

*E. J. Myers,* for the appellant.

*William A. Abbott,* for the respondent.

DANIELS, J.:

The plaintiff is the maker of a promissory note for the payment of the sum of $3,893 in five months after the 4th of June, 1887. This note was made to the order of Mr. Shaleck and delivered to George K. Chase, for his use and accommodation. He transferred the note to the Farmers and Drovers' National Bank of Somers as further security for an indebtedness contracted by him, and existing against him in favor of the bank. Preceding transactions had taken place between the parties, but they do not essentially affect their rights or obligations and, therefore, require no notice or examination for the decision of the appeal. The plaintiff brought this action to secure the application of collaterals deposited by Chase with the bank, or their proceeds, to the payment of the note, and for his exoneration from liability thereby. It proceeded upon the theory that he had become in this manner a surety for Chase, who afterwards departed this life, and was at the time of his decease insolvent. It appeared from the complaint and the affidavits, that other persons had incurred similar obligations for Chase to the bank, who claimed to be protected and indemnified by means of these collaterals; and one of the objects of the action was to settle the rights of these contesting parties and to determine the amount or proportion of the collaterals which might be applied to the payment of this indebtedness.

Shortly after this suit was commenced the bank brought an action upon the note against the plaintiff in this suit, and an application was then made upon affidavits as well as the complaint, for an injunction restraining the prosecution of that action until the hear-

ing and decision of this case. The order containing the injunction clause was afterwards vacated, with liberty to the plaintiff to apply for a stay of proceedings in the action brought by the bank, and an order for that object was obtained requiring the bank to show cause why further proceedings in its action should not be stayed until the disposition of this case. Upon the hearing of the application under that order, the order from which the appeal was taken was made, denying the application, upon the bank stipulating to retain the collaterals, or their proceeds, in its possession for the payment of the claims thereon, to abide the event of this action, and a stipulation to that effect was afterwards made and filed on behalf of the bank.

It was further shown, by the affidavit of the cashier of the bank, that the collaterals would probably prove deficient in amount to pay the obligations which Chase was under to the bank; and, additionally thereto, it was shown that there was a controversy between the personal representatives of the estate of Chase and the plaintiff, whether his note was an accommodation note, and whether the note of another person held by the bank was of that description. It further appeared from the complaint that the other defendants in this action also claimed that the proceeds of the collaterals should be applied to the discharge of the several obligations of Chase himself to the bank, and to the discharge of the obligations for which they were severally liable to the bank for the indebtedness of Chase in preference to the plaintiff.

These were controversies, so far as they related to the several sureties, in which the bank itself had no interest, but they were to be settled between the plaintiff and the other defendants in the action, and no rule of equity has proceeded so far as to restrain the creditor, under these circumstances, from proceeding to collect its debt upon the note, or other obligation of a surety until these disputes are settled by litigation betweeen the other parties.

It is true that the plaintiff, as the accommodation maker of the note, was entitled to the benefit of the collaterals in the hands of the bank, received from the principal debtor, so far as they, or their proceeds, could equitably be made applicable to the payment of this indebtedness. But that did not entitle the plaintiff either to an injunction restraining its suit on the note or to a stay of proceedings

in that action. The bank had the right to prosecute the maker of the note and recover its debt of him, leaving him to avail himself of the protection which could be afforded by the application of the collaterals, or their proceeds, to his reimbursement, after the dispute between himself and the others should be settled. Neither the authorities referred to on behalf of the plaintiff, nor any others which have been found, sustain any greater right on the part of the plaintiff than this under the circumstances here presented. The cases of *Irick* v. *Black* (17 N. J. Eq., 189); *Thomson* v. *Taylor* (11 Hun, 274) and *Philadelphia, etc., Railroad Company* v. *Little* (5 Cent. Rep., 57), were sustained upon the ground of special equities vested in the surety and subordinated to no preceding controversy of the description of that disclosed in this proceeding. And it may be where the collaterals are readily available to the creditor, and can be applied by him, without the settlement of any dispute, to the payment of the indebtedness in exoneration of the surety, with the same facility and certainty as a proceeding against the surety himself, that the court would direct that disposition to be made of the securities in a case where the principal debtor is himself insolvent. The law was so considered in *McConnell* v. *Scott* (15 Ohio [Gris.], 401.)

It was there said, in the course of the opinion, that "there is no adequate remedy at law, when the principal debtor is insolvent, by which his effects and credits, in the hands of others, can be made to be applied for the benefit of the surety. Certainly not, as we have already said, without the surety first pays the debt; and such payment may be attended with great inconvenience and severe sacrifices of property — burdens which ought not to be imposed if they can, with propriety and justice, be avoided." (Id., 403.) And this rule was followed in *Wilcox* v. *Todd* (64 Mo. 388), and *Wooten* v. *Buchanan* (49 Miss., 386). It was held in the last case that the remedy the surety has when his property, as well as that of the principal, has been levied upon, is to force his creditor first to exhaust the remedy against the principal debtor before a sale of his own property under the judgment. If the principal had other property, that also could be indicated as a primary fund to satisfy the debt. He has also the clear right to point out other property of the principal debtor, if he can, and compel his judg-

ment-creditor to satisfy his debt out of that. (Id., 391.) But this cannot be done to the prejudice or injury of the creditor in the collection of his debt.

The courts of this State, however, have not yet so fully adopted this liberal and equitable principle in favor of the surety. Neither has it been rejected. But the plaintiff, clearly, is not entitled to invoke it under the principle of these authorities as long as a dispute stands between him and the right to appropriate the collaterals for his benefit, with other persons claiming priority over him. (*Garry* v. *Cannon*, 3 Ired. Eq., 64.)

The case of *Wright* v. *Austin* (56 Barb., 13) states the rule as to the right of the surety to compel the principal to apply collaterals in his hands to the satisfaction of the debt very broadly; but the point was not so broadly presented by the facts for the decision of the court, and even there it was not extended so far as to support the right to the stay claimed on behalf of the plaintiff. In *First National Bank, etc.,* v. *Wood* (71 N. Y., 405), the subject was further considered, but this principle was not held to have extended so far as to entitle a surety to this species of relief. (Id., 410–412.) The case of *Neimcewicz* v. *Gahn* (3 Paige, 614) proceeded upon an entirely different state of facts. That was an action for the foreclosure of a mortgage, and it has been the constant practice of courts of equity in foreclosure suits to order the property of the principal debtor to be first sold for the payment of the mortgage indebtedness; and, in support of the direction which was there given, it was said that "the application of this equitable rule of throwing the charge upon the property of the principal debtor and extinguishing that fund in the first place, in exoneration of the estate of the surety, is of every day's occurrence." (Id., 640.) And that, beyond doubt, is the rule followed and applied in foreclosure suits; and if other cases are to be controlled by it, the qualification must be attached to it that the creditor has the unqualified power to pay the debt out of collaterals, without delay or any legal impediment. It has no application to a case of this description, in which the courts have never undertaken to restrain a creditor in the enforcement of the contract of the surety until disputes may be settled with others concerning the application of collaterals held by the creditor for the security of the debts.

The order in this case afforded the plaintiff all the relief which, under the facts appearing, he was entitled to claim, and it should be affirmed, with ten dollars costs and disbursements.

BARTLETT, J., concurred.

Order affirmed, with ten dollars costs and disbursements.