COURET ET AL *v.* CONNER ET AL.

[79 South. 230, In Banc.]

1. CONTRACTS. *Construction. What law governs.*

A contract unless it is to be performed elsewhere, must be construed according to the laws of the place where made.

2. CONTRACTS. *Requisites. Acceptance of offer. Place.*

A contract results from the acceptance of an offer and is made when and not until the offer is accepted, so that the place where a contract is made is necessarily the place of acceptance of the offer.

3. ASSIGNMENTS. *Acceptance. Place.*

Where a Mississippi bank's offer to assign notes was made by letter to a bank in New Orleans, Louisiana, the contract of assignment became complete when the proposed assignee deposited its letter of acceptance in the mail at New Orleans.

4. BILLS AND NOTES. *Transfer. Construction of asignment. What law governs.*

.Where a contract by which notes were assigned to a Louisiana bank, was made in Louisiana, such contract was governed by the laws of that state.

5. VENDOR AND PURCHASER. *Vendor's lien. Rights of assignee. Competition by assignor.*

Where an assignment of notes was governed by the laws of Louisiana, the holder of notes secured by a vendor's lien on property, on assigning a part of them, could not compete wth his asignee if the proceeds of a foreclosure sale were insufficient to pay both the assignor and the assignee, in such case the as· signee would have the priority.

6. BILLS AND NOTES. *Assignments. What law governs.*

That notes in controversy between an assignor and an assignee were payable in Mississippi was immaterial to their rights where the assignment was governed by the laws of Louisiana, for while the law of the place where a promissory note is payable governs as to its nature, validity, interpretation, and effect, no such question arises where the controversy arises solely out of a contract by which the notes were assigned by a former holder thereof, which contract is separate and distinct from that of the notes.

7. RECEIVERS. *Sale of property. Proceeds. Fund to be distributed.*

In this case the court held that the fund to be distributed under an agreement between the receivers of the payee of vendors' lien notes and the assignee of part of the notes, was the net proceeds of the sale of the land by the maker's receiver, and not the proceeds of the sale made by the payee's receiver.

APPEAL from the chancery court of Adams county. HON. R. W. CUTRER, Chancellor.

Suit by John F. Couret and others, trustees for the stockholders of the Canal Louisana Bank & Trust Company, against L. P. Connor and others, receivers of the First Natchez Bank. From a judgment for defendants, plaintiffs appeal.

The facts are fully stated in the opinion of the court.

*H. C. Holden, J. N. Flowers* and *Farrar, Goldburg & Dufour,* for appellants.

The First Natchez Bank, being the holder of all the notes of the Tensas River Planting Company secured by vendor's lien on land in Louisana and having assigned or pledged three of them to secure its own debt could not, with these notes of the series retained by it, participate in the proceeds of sale of the land when such proceeds were insufficient to pay the entire series of the notes and in this manner reduce the value of its own collaterals and avoid the payment of its own obligation.

II. The receivers of the First Natchez Bank stands in the place of the bank and their right to participate in the deficient proceeds of sale of the security is precisely the same as the bank itself would have had if it had continued in business till the time of the sale.

III. The proceeds to be distributed are the proceeds of sale by the Tensas River Planting Company, receiver, and not the proceeds of sale by the receiver of the First Natchez Bank made after they purchased at the sale made by the Tensas receiver.

The above propositions we will take up in order.

I. That the bank could not with the retained notes participate in the distribution of the proceeds of sale, when the proceeds were insufficient to pay all the notes until the notes which it has pledged or assigned were first paid.

A. The general rule as stated by Pomeroy (Eq. Jur., sec. 1203, Vol. 3, 3rd Ed.) is as follows: "When the mortgagee assigns one or more of the notes, and retains the remainder of the series it is generally held that the assignee is entitled to a priority of lien as against the mortgagee, with respect to the note so

transferred; and this rule operates without regard to the order in which the notes held by the two parties mature." 2 Jones on Mortgages (6 Ed.), sec. 1701; 27 Cyc. page 1304; *Brewer* v. *Atkenson*, 121 Ala. 410, 25 So. 992; *Knight* v. *Ray*, 75 Ala. 383; Preston v. *Ellington*, 74 Ala. 133; *Kuppenheimer et al.* v. *Chicago, etc., Company*, 163 Ill. App. 127; *Knight* v. *Ray*, 75 Ala. 383; *Lawson* v. *Warren*, decided in 1912, 124 Pac. 46, 42 L. R. A. (N. S.) 183; Ann. Cas. 1914 C. P. 139; *McClintic* v. *Wise's Admr.*, 25 Gratt. 448, 18 Am. Rep. 694; *Alden* v. *White*, 32 Ind. App. 671, 102 A. S. R. 261; *Ragan* v. *Hewlett*, 7 Ky. Law Rep. 755; *Douglas* v. *Blount*, 22 Tex. Civ. App. 493, 55 S. W. 526; *Whitehead* v. *Fisher*, 64 Tex. 639; *Roberts* v. *Mansfield*, 32 Ga. 228, 234; *Richardson* v. *McKin*, 20 Kan. 346; *Preston* v. *Morsman*, 75 Neb. 358, 371; *Mayes* v. *White* 9 Kan. 640; *Grattan* v. *Wiggins*, 23 Cal. 16; *Anderson* v. *Sharp*, 44 Ohio St. 660; *Foley* v. *Rose*, 123 Mass. 557; *Jenkins* v. *Hawkins*, 34 W. Va. 799; *Stephens* v. *Black*, 1 N. J. Eq. 338; *Parker* v. *Mercer* (1842), 6 How. 320; *Cage* v. *Idler* (1845), 5 S. & M. 410; *Henderson* v. *Henrod* (1846), 10 S. & M. 631; *Pugh* v. *Hold* (1854), 27 Miss. 141; *Trustees of Jefferson College* v. *Prentiss* (1855), 29 Miss. 46; *Davidson* v. *Allen* (1858), 36 Miss. 419; Wooldridge v. Bomar, 64 Miss. 34, *Bank of England* v. *Tarleton* (1851), 23 Miss. 173.

In Louisiana the rule is well settled and strictly followed that "The assignor cannot, in the language of that court, complete with the assignee, and, as we shall hereafter show, the law of Louisiana is the controlling law in this case. In order that the question as to the law of Louisiana on this subject may be set at rest we devote some space to the decisions of that court. *Edward Salzman* v. *His Creditors*, 2 Rob. (La.) 241.

The pledger of a note or other security has all the rights of an owner and is for all practical purposes the owner of the obligation. *Mechanics Building*

*Association* v. *Ferguson,* 29, La. 548; *Fidelity & Deposit Company* v. *Johnson,* 117 La. 899, 42 So. 347.

The general rule which we have numbered 1 (page—, *supra*) controls and decides this case not only because it is the rule supported by the weight of authority and reason, but also because it is the adopted rule in Louisana and this contract of pledge was made in Louisiana and the rights of the pledgor and pledgee as between themselves are controlled by the law of that state. 13 C. J., pp. 580-581; 9 Cyc., p. 670; *Clark* v. *Belt,* 223 Fed. 573, 577; Wharton on conflict of Laws (3 Ed.), sec. 4220; *Burton* v. *United States,* 202 U. S. 382, 50 L. Ed. 1057, 1073.

From the above it must appear to the court too plain for argument that this was a Louisiana transaction. The next immediate inquiry is: Was it a Louisianan transaction to the extent that the rights of the parties are to be controlled by the laws of Louisiana?

The contract of pledge was made between the holder of all the notes of the series secured by one instrument evidencing a lien on land, on the one part, and the Canal-Louisiana bank and Trust Company, a creditor of the said holder. This was a separate and independant contract, separate from the notes themselves. The question at issue is between two holders of these notes as to their relative rights in the mortgage fund. Their rights are necessarily determined by the contract between them. The term, collateral security or collateral, means a pledge of incorporeal property assigned or transferred and delivered by a debtor or some one for him to a creditor as security for the payment of a debt or the fulfilment of an obligation. It stands by the side of the principal obligation as an additional means to secure the payment of the debt or the fulfillment of obligation. Jones on Collateral Securieites Pledges, par. 1, Collateral security is defined by Bouvier as a separate obligation attached to another

contract to guarantee its performance. "A pledge may be defined to be a deposit of personal property as security, with an implied power of sale upon default (Jones, Pledges, par. 1), the assignment or pledge is an independent contract. *Bank* v. *Tarleton, supra,* p. 181, where it is said: "The contract of assignment was separate and distinct from that of the notes. The assignment was made in Louisiana, where likewise the notes were payable. It is undoubtedly true, that as a general principle, that the law of Louisiana would govern the rights of the parties arising under the assignment." Jones on Collateral Securities, sec. 133; 5 C. J. P. 941; *Partee* v. *Silliman,* 44 Miss. 277; 9 Cyc. pp. 667-668; 13 C. J., pp. 247-248. The supreme court of the United States in *Scudder* v. *Bank,* 91 U. S. 406, 23 L. Ed. 245, 249; Dicey, Conflict of Laws, p. 563. This court has already held similiar provisions in a contract of a New Orleans bank with this same Natchez Bank to be valid and subject to forecloseure in New Orleans. *Commercial-Germania Trust & Savings Bank* v. *L. P. Conner, Receiver,* 75 So. 445, 114 Miss., 2, R. C. L. pp. 626-627; 5 C. J. 969.

That the receivers stand in the place of the Bank and their right to participate in the insufficient proceeds is precisely the same as the bank itself would have had if it had continued in business until the time of the sale. *Wooldridge* v. *Bomar,* 64 Miss. 34; *American Trust & Savings Bank* v. *McGettingan,* 152 Ind. 582, 71 Am. St. Rep. 345, 52 N. E. 793; Gluck & B., Receivers, sec. 6; 20 Am. & Eng. Ency Law, p. 407; *Woerishoffer* v. *North River Constr. Company,* 99 N. Y. 398-402, 2 N. E. 407; *Hubbard* v. *Hamilton Bank,* 7 Met. 340; *Minchin* v. *Second Nat. Bank,* 36 N. J. Eq. 436; *Snow* v. *Winslow,* 64 Iowa, 200, 6 N. W. 191; *Hale* v. *Frost,* 99 U. S. 389, 25 L. Ed. 419; *Nix* v. *Ellis,* 118 Ga. 345, 98 Am. St. Rep. 111, 45 S. E. 404; *Powers* v. *Central Bank,* 18 Ga. 658; *Georgia Seed Company* v. *Talmadge,* 96 Ga. 255, 22 S. E. 1001; *Ryder* v. *Ryder,* 19 R. I. 188,

32 Atl. 919; *Mitford* v. *Mitford,* 9 Ves. Jr. 87; *Sherring-ton* v. *Yates,* 12 Mees. & W. 855, 1 Dowl & L. 1032, 13 L. J. *Exch,* 160; *Winson* v. *McCellan,* 2 Story, 492, Fed. Cas. No. 17887; *Fletcher* v. *Morey,* 2 Story, 555, Fed. Cas. No. 4864; *Mitchell* v. *Winslow,* 2 Story, 630, Fed. Cas. 9673; *Re Griffiths,* 1 Low, Dec. 431, Fed. Cas. No. 3540; *Re Dow,* 6 Natl. Bankr. Reg. 10; *Cog-gershall* v. *Potter,* Holmes, 75 Fed. Cas. No. 3955; *Johnson* v. *Patterson,* 2 Woods, 443, Fed. Cas. No. 7403 *Goddard* v. *Weaver,* 1 Woods, 257, 269, Fed. Cas. No. 51495; *Re Collins,* 12 Natl. Bankr. Reg. 379, 12 Batchf. 548, Fed. Cas. No. 3007; *Platt* v. *Preston* (4. C.), Fed. 394; *Yeatman* v. *New Orleans Sav. Inst.,* 95 U. S. 764, 24 L. Ed. 598; *Stewart* v. *Platt,* 101 U. S. 731, 739, 25 L. Ed. 816, 818; *Houselt* v. *Harrison,* 105 U. S. 401, 406, 26 L. Ed. 1075, 1076; *Adams* v. *Collier,* 122 U. S. 382, 30 L. Ed. 1207, 7 Sup. Ct. Rep. 1208; *Brown* v. *Brabb,* 67 Mich. 17, 22032, 11 Am. St. Rep. 549, 34 N. W. 403; *Jones,* Chat. Mortg., sec. 241; *Miller* v. *Savage,* 60 N. H. Eq. 204, 46 Atl. 632.

The general principle is sustained by the following cases; *Kittredge* v. *Osgood,* 161 Mass. 384, 37 N. E. 369; *Cramer* v. *Iller,* 63 Kan. 384, 37 Pac. 617; *Reeves* v. *Pierce,* 64 Kan. 502, 67 Pac. 1108; *Smith* v. *Sioux City Nursery & Seed Company,* 109 Iowa, 51, 79 N. W. 457; *Gillam* v. *Nussabaum,* 97 Ill. App. 2771; *Link Belt Machinery Co.* v. *Hughes,* 174 Ill. 155, 51 N. E. 179; *Arnold* v. *Weimger,* 40 Neb. 216, 58 N. W. 709; *State of New Jersey S. R. Co., Prose-cutors* v. *Railroad Comrs.,* 41 N. J. L. 235; *Com-mercial Pub. Co.* v. *Beckwith,* 167 N. Y. 329, 60 N. E. 642; *Battery Park Bank* v. *Western Carolina Bank,* 127 N. C. 432, 37 S. E. 461; *Pelletier* v. *Green-ville Lumber Company,* 123 N. C. 596, 68 Am. St. Rep. 837; 31 S. E. 855; *Scott* v. *Armstrong,* 146 U. S. 499, 36 L. Ed. 1059, 13 Sup. Ct. Rep. 148; *Southern Granite Co.* v. *Wadsworth,* 115 Ala. 570, 22 So. 157; *Crine* v. *Davis,* 68 Ga. 138; *Shinkle* v.

*Knoll,* 99 Ill. App. 274; *Brownson* v. *Roy,* 133 Mich. 617, 95 N. W. 110; *Avery* v. *Ladd,* 26 Or. 579, 38 Pac. 1088; *Kidder* v. *Beavers,* 33 Wash. 635. 74 Pac. 819.

*Ratliff & Kennedy,* for appellee.

There are two propositions involved in this appeal, the first of which is a question of law, and the second a question of fact, to wit:

1. Should the proceeds of the sale of the mortgage lands, where they were insufficient to pay all notes be applied *pro rata,* or should the notes transferred without endorsement by the First Natchez Bank be paid with preference to the other notes of the series held by the receivers.

The consideration of the first proposition is the more inportant and may be classified: (a) What law governs? and (b) What is that law? We shall take these propositions up in order.

A mortgage , or deed in trust is a mere incident to the principal contract, the notes and an assignment of the notes carries the security *pro tanto,* as a mere incident. *Gabbert* v. *Wallace,* 66 Miss. 618.

Notes executed within this state, but payable in another state must be governed by the law of that state, though given for the price of property within this state and reserving title to the property until full payment. *Lienkauf Baning Co.* v. *Haney,* 46 So. 626, 93 Miss. 613.

Where notes dated and payable in Tennessee were given for the purchase price of lands in Mississippi and secured by a deed in trust, the rights under the notes was to be determined by the laws of Tennessee, the place of payment. *Kendrick* v. *Kyle,* 28 So. 951; *First National Bank of Iowa City* v. *John MacGrath & Sons,* 72 So. 701; *Allen* v. *Bratton,* 47 Miss. 119.

Counsel for appellant apparently concedes that the notes of the Tensas River Planting Company, here sued upon, are governed by the laws of the state of Mississippi, but contends that the contract of pledge, whereby the trustee came into possession of said notes governs the liability on the notes.

We have attempted to make ourselves clear on this proposition to the effect that the contract of pledge could in no way effect the note pledged; that the contract of pledge is a mere incident to the right of the trustee to collect the thing pledged.

On this particular point, we refer the court to the case of *Swedish American National Bank* v. *First National Bank*, 89 Minn. 98, 99 Am. State Reports 549.

The suit is within a Mississippi court, upon a Mississippi contract, which provides on its face that it is to be performed in Mississippi and the defendants are Mississippi creditors of the insolvent bank, and how it could be contended that those Mississippi contracts should be governed by the laws of the state of Louisiana, because the pledgee lives in the state of Louisiana, we are unable to understand.

What is the law of Mississippi on this question? Law book writers seem to make some distinction between the rights of different assignees of a series of notes as against each other, and the rights of an assignee, as against his assignor. Our court has twice passed upon the direct proposition involved in this case. *Pugh* v. *Hold*, 27 Miss. 461; *Davidson* v. *Allen*, 36 Miss. 419; *Wooten* v. *Buchannan*, 49 Miss. 386; *Trustees of Jefferson College* v. *Prentiss*, 29 Miss. 46; *Bank of England* v. *Tarleton*, 23 Miss. 173.

In the case at bar the Tensas River Planting Company notes were not endorsed by the First Natchez Bank, which, as we will hereafter see, is a very significant fact and determines the liability of the as-

signor in many cases cited by opposing counsel, in which the notes were not permitted to pro rate. *Henderson* v. *Herod*, 10 S. & M. 631.

The assignment of a note, secured by a mortgage carries the mortgage with it as an incident of the note and subrogates the assignee to all the rights of the mortgage. There is nothing, in the special assignment that accompanied the first note, which gives that note any preference over its fellows in the mortgage. *Terry* v. *Wood*, 6 S. & M. 139. The case bears out the following syllabus: "The assignment of a note, secured by a mortgage carries the benefit of the mortgage along with it to the assignee, and the notes pro rate." *Cage* v. *Iler*, 5 S. & M. 410.

"Where several notes, maturing at different periods are secured by a deed in trust and have passed maturity, and a sale takes place under the trust of the trust property, the proceeds of the sale are to be applied ratably to the several notes." *Fore* v. *McCanless*, 60 Miss. 244.

The general law of Mississippi is that the notes shall pro rate and the laws of other jurisdictions require that the notes shall pro rate, if such was the intent of the parties, gathered from the circumstances. Mississippi does not recognize the rule that the first assigned of the note shall have a preference, nor that the first maturing shall have a preference, but if the law controlling the several assigned notes and the rights of the respective parties is the law of the state, where the assignment took place, it then lay within the power of the First Natchez Bank to have absolutely defeated the rights of the Canal-Louisiana Bank and Trust Company by negotiating all of the first maturing notes in a jurisdiction where the rule of the right of their priority obtains.

The decisions of the court of Mississippi are controlling and exclusive as to the questions involved,

but let us see something of the general law on the subject: 27 Cyc., p. 1303.

The identical question here involved arose in the case of *Fourth National Bank's Appeal,* 123 Penn. State, 473, 10 American State Reports, 548.

The case of *Lawson* v. *Warren,* reported in 34 Okla. 94 (1914C.), Ann. Cases 139, 42 L. R. A. (N. S.) 183, is the principal case relied upon by appellants. The note writer for both the Ann. Cases and L. R. A. shows that the great weight of authorities is *contra* the case reported.

The case of *Kuppenheimer* v. *Chicago, etc.,* 163 Ill. App. 127 cited by counsel for appellant, on page 12 1/2 is in a jurisdiction which recognizes the priority of notes in order of their maturity and the controlling proposition in the case was that principle of law which has been specifically denounced by our courts.

The Louisiana court in the case of *Bumbell* v. *Boyer,* 16, So. 465, used the following language: ''If in place of the formal transfer ''without recourse'' Boyer had placed his simple signature on the note, opponents could have in all likelihood availed themselves of the benefit of the rule of the commercial law to the effect that one who assigns to another, one of a series of concurrent mortgage notes, cannot come in competition with the assignee, if the security be insufficient to pay both.''

The endorsement by the assignor was a vital fact in this Louisiana case and likewise in practically every other case which we have been able to examine.

The laws of the state of Mississippi should govern for three reasons: 1. It is the law of the contract; 2. It is the law of the forum; 3. It is the law selected by agreement.

If it is the settled law that the assigned notes were entitled to priority, it is rather unique that the entire series outstanding should find their way

into the hands of a receiver on a basis of forty cents on the dollar, even though there was a misunderstanding as to the three notes involved in the case at bar.

We submit that the judgment of the lower court was correct on the questions of law and proper as to his findings on the facts and that the decree of the lower court in this case should be affirmed.

*S. Beekman Laub,* for appellee.

Under the law of Mississippi a note is governed by the laws of the state where it is made payable regardless of whether it affects property in Mississippi or elsewhere, and such is the law of the state of Louisiana. See 7, Century Digest, Bills and Notes, secs. 248, 254. A note executed and payable in Tennessee as to the nature of the contract is governed by the law of that state, *Allan* v. *Bratton,* 47 Miss. 119. Notes for the purchase price of lands located in this state but dated and payable in another state are construed according to the laws of the latter state. *Kendrick* v. *Kyle,* 78 Miss. 278, 28 So. 951. A negotiable note executed in this state and payable in another state is governed by the laws of that state although given for the price of property and secured by such property in this state. *Lienkauf Banking Co.* v. *Haney,* 93 Miss. 613, 46 So. 626; See also Decennial and American Digest, Key number 117 Bills and Notes.

Appellants devote quite a space in their brief to arguing that the delivery of these three notes was made at New Orleans and that therefore these three notes would be governed thereafter in their relation to the other twenty-seven notes by the laws of the state of Louisiana. Other counsel for appellee in their brief have ably pointed out the fallacy of this argument and have reduced to an absurdity by point-

ing out the conflict which would ensue in event other notes of the series had been delivered in other jurisdictions holding the first note assigned has priority, the first note maturing has priority; all pro rate, and only those assigned have priority and others holding those endorsed have priority.

As we have pointed out we think it is clear that the place of delivery can only be important in determining the right of the pledgee to the thing delivered and that his right to the thing delivered in no way changes the nature of the thing delivered.

And if we are going to consider what is the law of Mississippi and decide according to the law of Mississippi as it stood at the time these notes were executed and delivered to appellants, then the decree of the chancery court of Adams county, Mississippi, must be affirmed. The following Mississippi cases hold that ratable distribution must be made among the several note holders. *Cage* v. *Iler,* 5 S. & M. 420; *Terry* v. *Woods,* 6 S. & M. 139; *Henderson* v. *Herrod,* 10 S. & M. 631; *Bank* v. *Tarleton,* 23 Miss. 173; *Trustees* v. *Prentiss,* 29 Miss. 173; *Trustees* v. *Printiss* 29 Miss. 46; *Pugh* v. *Hold,* 27 Miss. 461; *Wooten* v. *Buchanan,* 49 Miss. 386.

The question at issue must be settled under the law of the state of Mississippi because the notes on which suit is brought were made here and are payable here, and because the law of the forum governs in determining questions of preference and priority and the chancery court of Adams county, Mississippi was expressly selected as the forum in which this suit should be brought and is the forum in which this suit was brought.

It is respectfully submitted that the decree of the lower court must be affirmed.

SMITH, C. J., delivered the opinion of the court.

On August 20, 1913, the First Natchez Bank became the owner of thirty notes executed by the Tensas River Planting Company for ten thousand dollars each, payable at Natchez, Miss., at which place the Natchez Bank was domiciled, secured by a vendor's lien on lands situated in the state of Louisiana. The Natchez Bank was indebted to the Canal Louisiana Bank & Trust Company of New Orleans, La., in the sum of one hundred and twenty-five thousand dollars, secured by certain promissory notes which the Natchez Bank had indorsed to the Louisiana Bank as collateral. The Natchez Bank desiring to obtain possession of these collateral notes mailed from Natchez to the Canal Louisiana Bank & Trust Company at New Orleans three of the Tensas River Planting Company's notes held by it, with the request that these notes be accepted by the Louisiana Bank in lieu of the colleterial notes then held by it, and that these collateral notes be returned to the Natchez Bank. This proposition was accepted by the Louisiana Bank, and the collateral notes then held by it were returned to the Natchez Bank by mail. The Tensas River Planting Company's notes were payable to its order and indorsed by it in blank. They were not indorsed by the Natchez Bank, and there was no written assignment of them by the Natchez Bank to the Louisiana Bank, other than the letter in which they were transmitted from the first to the latter. The Louisiana Bank requested the Natchez Bank to forward to it the mortgage securing the Tensas River Planting Company's notes, but the Natchez Bank refused so to do, giving as a reason therefor that the mortgage was held by it as security for all the notes.

Seven other of the Tensas River Planting Company's notes were hypothecated by the Natchez Bank

to certain of its creditors other than the Louisiana
Bank, three of which were returned to it, and may
be here dismissed from further consideration.

On October 30, 1913, the Natchez Bank was placed
in the hands of appellees as receivers. The Canal
Louisiana Bank & Trust Company consolidated with
two other banks and changed its name to Canal Bank
& Trust Company. Part of the assets of the Canal
Louisiana Bank & Trust Company, including the
note executed to it by the Natchez Bank, together
with the notes of the Tensas River Planting Com-
pany by which the note of the Natchez was secured,
were placed in the hands of the appellants as trus-
tees for the stockholders of the Canal Louisiana
Bank & Trust Company, and they now hold the legal
title thereto.

The Tensas River Planting Company was also
placed in the hands of a receiver by judicial pro-
ceedings in Concordia parish, La. This receiver was
directed by the Louisiana court to sell the land owned
by the Planting Company on which the Natchez Bank
held the vendor's lien, and appellees decided to
purchase it so they could sell it to one Johnson, who
had agreed to purchase it from them. The minimum
price at which the receiver of the planting company
could sell the land under the order of the Louisiana
court was ten dollars per acre. Appellees desired
to use the Tensas River Planting Company's notes
in paying the receiver of that company for the land,
but could not do so under the order of the Louisiana
court unless they could surrender to him all of the
planting company's notes. Appellees agreed, there-
fore, with the holders of the four notes upon the
value thereof, paid to them the amount so agreed
on, and those notes were then delivered by the hold-
ers thereof to appellees. Appellees then delivered
the three notes held by them to appellants to be

used by them in payment of the land upon a written agreement reciting:

"That the claim of the legal holders of the said three notes and the claim of the other twenty-seven notes of said issue against certain lands of the Tensas River Planting Company, namely, the La Marque, Hubter, and Rota Quinta plantations, in Concordia parish, La., shall be a claim against the proceeds derived from the sale of said lands in the hands of the receivers of the First Natchez Bank, and that the sum of thirty-one thousand three hundred and seventy-six dollars and eighty-five cents shall be deposited by the receivers in City Bank & Trust Company of Natchez, Miss., as a special trust fund to be held to await the final decree of the court as to what amount the said trustees as legal holders of said three notes are entitled in the distribution of the proceeds of said sale, said deposit being made only to assure payment to said trustees of such decree of distribution as may be rendered, said deposit to be made upon approval by the chancellor of this agreement.

"Third. It is further agreed that the trustees for stockholders of the Canal-Louisiana Bank & Trust Company shall file or cause to be filed in the chancery court of Adams county, Miss., to the January term, 1917, of said court, such proceeding as may be necessary to have adjudicated the question as to the extent of the right of the said holders of all of said notes to participate in the distribution of the proceeds of sale of the said lands.

"Fourth. That if the said lands should at the said sale, or any receivers' sale thereof, be sold to any other than the receivers of the First Natchez Bank, for a price in excess of $10 per acre, then there shall be deposited by said receivers in the same manner as the above deposit is agreed to be

made and as a part of the same fund three-sevenths of the said excess subject to the same conditions, and to await the final decree of said court. . . .

"That the said trustees shall not claim any greater proportion of the proceeds which said receivers shall receive from the sale of said land than they could have claimed previous to be purchase of four other of said notes under said order of December 16, 1916.

"Seventh. Subject to the right of said receivers of the First Natchez Bank to use said three notes in the purchase of said property as above stated, it is agreed that said trustees are now the legal holder of said notes and of the indebtedness of the First Natchez Bank to the Canal-Louisiana Bank & Trust Company.

"Eighth. This agreement is made to facilitate the trial by the chancery court of Adams county, Miss., of the claim of said trustees under said three notes and the claim of the said receivers under the twenty-seven of said notes they now hold to share in the distribution of the proceeds from the sale of said property."

Appellees purchased the land pursuant to this agreement at ten dollars per acre, and afterward sold it to Johnson for eight dollars and fifty-one cents per acre. After deducting the fees and expenses of the planting company's receiver from the amount of appellee's bid for the land there will be left a balance of about seventy-three thousand two hundred and twelve dollars and seventy-five cents, a sum not only insufficient to pay all of the planting company's notes, but insufficient also to pay the three notes held by the appellants and the four notes formerly held by other creditors of the Natchez Bank in the event it should be applied to the payment thereof.

Appellants' contentions are: First, that since the proceeds of the sale of the planting company's lands

are insufficient to pay all of the notes secured by the vendor's lien thereon under which the sale was made, the notes secured by this lien and retained by the Natchez Bank should not participate in the distribution of the proceeds of the sale until all of the notes secured by the lien that have been assigned by the Bank have been paid: second, that the fund to be distributed is the proceeds of the sale of the land by the receiver of the Tensas River Planting Company.

Appellees' contentions, which were sustained by the court below, are: First, that the proceeds of the sale of the land should be applied to the payment of all of the planting company's notes *pro rata,* and, second, that the fund to be distributed is the proceeds of the sale of the land by appellees to Johnson.

Appellants do not claim that the three notes held by them are entitled to any priority over the four notes which the Natchez Bank had hypothecated to other of its creditors, and which were afterwards released by these creditors as hereinbefore set out, so that any question relative thereto is eliminated herefrom. Appellants' claim, therefore, is that they should be paid three-sevenths of the proceeds of the sale of the land.

The thirty-one thousand three hundred and seventy-six dollars and eighty-five cents deposited by appellees with the City Bank & Trust Company under their agreement with appellants is approximately three-sevenths of the amount paid by appellees for the land after deducting therefrom the fees and expenses of the planting company's receiver.

The contention of appellants that they are entitled to priority over appellees in the distribution of the proceeds of the sale of the land is based upon the theory that the distribution thereof should be made under the laws of Louisiana, according to which, where the holder of a claim secured by lien on

property assigns a part of it, he will not be permitted to come in competition with his assignee, if the proceeds of the sale of the property at a foreclosure of the lien is insufficient to pay both the assignor and the assignee, and the contention of the appellees is based upon the theory that the distribution should be made under the laws of Mississippi, according to which the holders of the notes should share equally therein. The only question for us to determine, therefore, is whether the rights of the parties hereto growing out of the assignment of the notes are governed by the laws of Mississippi or Louisiana.

The rights of these parties grow out of the contract by which the three notes in question were assigned by the Natchez Bank to the Louisiana Bank, and the rule is that a contract, unless it is to be performed elsewhere, must be construed according to the laws of the place where made. *Bank of England* v. *Tarleton,* 23 Miss. 173; *Brown Bros.* v. *Freeland,* 34 Miss. 181; *Partee* v. *Silliman,* 44 Miss. 272; *Shacklett* v. *Polk,* 51 Miss. 378; *Murdock* v. *Insurance Co.,* 59 Miss. 152.

A contract results from the acceptance of an offer, and is made when and not until the offer is accepted, sa that the place where a contract is made is necessarily the place of the acceptance of the offer. 13 C. J. 580; 9 Cyc. 670.

The offer by the Natchez Bank to assign the notes here in question to the Louisiana Bank as hereinbefore set out was made by letter from the Natchez Bank at Natchez to the Louisiana Bank at New Orleans, and the contract of assignment became complete when the Louisiana Bank deposited its letter of acceptance to the Natchez Bank in the mail at New Orleans. 1 Elliott on Contracts, section 62; *Burton* v. *United States,* 202 U. S. 344, 26 Sup. Ct. 688, 50 L. Ed. 1057, 6 Ann. Cas. 392.

The contract by which the notes were assigned to the Louisiana Bank was made therefore in Louisiana, and is governed by the laws thereof; consequently appellees are entitled to the priority claimed.

The foregoing discussion may have been unnecessary, for the point here under consideration is ruled by *Bank of England* v. *Tarleton,* 23 Miss. 173; for, although in that case the facts show that the assignor intended to give the assignee the right of prior satisfaction out of the proceeds of the mortgage, the court pointed out at page 181 of 23 Miss. that the assignment of the notes was made in Louisiana, and that consequently the rights of the parties arising under the assignment must be governed by the laws of that state.

That the notes here in controversy were payable in Mississippi is immaterial, for, while the law of the place where a promissory note is payable of course governs as to its nature, validity, interpretation, and effect, no such questions are here presented, for this controversy arises solely out of a contract by which the notes were assigned by a former holder thereof, which contract, as pointed out in *Bank of England* v. *Tarleton, supra,* is separate and distinct from that of the notes.

We are also of the opinion that the fund to be distributed under the agreement hereinbefore set out is the net proceeds of the sale of the land by the planting company's receiver, and not the proceeds of the sale made by appellees to Johnson.

*Reversed and remanded.*

ETHRIDGE, J. (dissenting).

I am unable to concur in that part of the opinion of the majority which holds that the appellants were entitled to preference as to the notes held by them as collateral security to secure a debt due the appellants by the First Natchez Bank. It appears that

the First Natchez Bank was indebted to the Canal Louisiana Bank & Trust Company in the sum of one hundred and twenty-five thousand dollars, represented by five promissory notes of twenty-five thousand dollars each, secured by certain collateral, among which were three unsecured notes of the Ellen Green Company in favor of the First Natchez Bank in the sum of ten thousand three hundred and fifty dollars, five thousand one hundred and seventy-five dollars and five thousand one hundred and seventy-five dollars respectively. An arrangement was made between the Ellen H. Green Company and the First Natchez Bank under which certain lands in Louisiana were sold to the First Natchez Bank in satisfaction of the debt due by the Ellen H. Green Company to said bank. These notes to the First Natchez Bank were unsecured and the Ellen H. Green Company had given mortgages to persons named Green in Louisiana; said Greens being the owners of the Ellen H. Green corporation. By this arrangement lands were sold to the First Natchez Bank, and these liens were released, giving the First Natchez Bank title to these lands.

A corporation was formed for the purpose of taking over these lands and operating them known as the Tensas River Planting Company, which corporation executed the notes involved in this suit to the First Natchez Bank, payable at the First Natchez Bank, Natchez, Miss., and secured by the lands above mentioned. When these notes were executed and delivered to the First Natchez Bank, two of the notes of ten thousand dollars each were sent to the Canal Louisiana Bank & Trust Company to be substituted for the unsecured notes of the Ellen H. Green Company held by such bank as collateral. These notes were acepted, and the Ellen H. Green Company notes were returned to the First Natchez Bank. Later the First Natchez Bank sent another ten thousand dollar note of the said Tensas River Planting Company to be held also as

collateral security for the debt of the First Natchez Bank.

The other notes of the Tensas River Planting Company were delivered to different banks to secure other debts owed by the First Natchez Bank. Some of these notes were held by a bank in New York City, some held by a bank in St. Louis, Mo., and some held by another bank at Natchez, Miss. In this condition the First Natchez Bank failed, being insolvent, and the appellees were appointed receivers of said bank to liquidate its affairs. A petition was presented to the chancery court by said receivers requesting authority and permission to use funds in their custody as receivers of said bank for the purpose of buying these outstanding notes at a discount in the interest of all the creditors of the bank.

The Canal Louisiana Bank & Trust Company notes were included in this application to the chancellor administering the affairs of the said First Natchez Bank, and an order was made by the chancellor permitting the said receivers to acquire the said notes with the assets of said bank for the benefit of the creditors of the said bank generally. It seems, however, that a misunderstanding arose between the Louisiana Bank and the receivers of the First Natchez Bank, and the arrangement was not carried out so far as the Louisiana Bank was concerned, but the other outstanding notes were acquired by the receivers by the use of the assets of the First Natchez Bank for the benefit of its creditors. This presents a different situation from what the case would be if the First Natchez Bank had held these notes at the time of the appointment of the receivers as assets of said bank. All of these notes were secured by a common mortgage, and there was no express agreement between the First Natchez Bank and the Louisiana Bank that said notes would have priority over the other notes secured by said mortgage, and the opinion of the majority is not

founded upon any such contract, but is founded upon the theory that under the laws of Louisiana the assignment of the notes would be given priority over the other notes, as the notes involved in this suit were governed by the Louisiana law.

The notes involved in this suit are payable in Mississippi, and are governed by the Mississippi law, under a long line of decisions of this court holding that the note is governed by the law of the place of the payment. *Miller, Mayhew & Co.* v. *Mayfield,* 37 Miss. 688; *Harrison* v. *Pike Bros.,* 48 Miss. 46; *Johnson County Savings Bank* v. *Yarbrough,* 106 Miss. 79, 63 So. 275; *Lienkauf Bank Company* v. *Haney et al.,* 93 Miss. 613, 46 So. 626; *Fellows* v. *Harris,* 12 Semedes & M. 462; *Hart* v. *Livermore Fdy. & Mach. Co.,* 72 Miss. 809, 17 So. 769; *Emanuel* v. *White,* 34 Miss. 56, 69 Am. Dec. 385; *Coffman* v. *Bank of Ky.,* 41 Miss. 212, 90 Am. Dec. 371; *Bank of La.* v. *Williams,* 46 Miss. 618, 12 Am. Rep. 319; *Dalton* v. *Murphy,* 30 Miss. 59; *Kendrick* v. *Kyle,* 78 Miss. 278, 28 So. 951; *First Nat. Bank of Iowa City* v. *McGrath & Son,* 111 Miss. 872, 72 So. 701; *Allen* v. *Bratton,* 47 Miss. 119.

In case of *Lienkauf Banking Company* v. *Haney et al* 93 Miss. 613, 46 So. 626, it was held that a note and the obligation and rights growing out of a note were governed by the law of the state where the note was payable, although given for purchase money of property within this state and reserving the title to the property until payment.

In the case of *Kendrick* v. *Kyle,* 78 Miss. 278, 28 So. 951, it was held that, where notes dated and payable in Tennessee were given for the purchase price of lands in Mississippi, and secured by a deed of trust on such lands, the rights of the parties under such notes were governed by the laws of Tennessee.

In the case of *First National Bank of Iowa City* v. *McGrath & Son,* 111 Miss. 872, 72 So. 701, where McGrath & Son gave a note payable to the Purity Manu-

facturing Company in the state of Illinois, and pledged by such company to the First National Bank of Iowa, which bank brought the suit, and where McGrath attempted to make defenses permissible under the laws of Mississippi, but not entertainable under the laws of Illinois, court held the law of Illinois governed, and such defenses were not permissible.

In the case of *Allen* v. *Bratton,* 47 Miss. 119, one Dobbins sold Bratton a tract of land in Mississippi and took three notes payable in Memphis, Tenn., but secured by vendor's lien on the lands. Dobbins sold one of the notes to Allen in this state and another in the city of New Orleans, La., to the Crescent City Bank, and this court held that the rights of the parties were governed by the Tennessee law, where the notes were payable, and not by the Mississippi law or the Louisiana law, where the transfers were made.

This court has held in a number of cases that, where several notes were secured by the same deed of trust, or other instrument, all of the notes were entitled to share *pro rata* in the proceeds of the sale of the security where such proceeds are not sufficient to pay all of the notes, and that the assignment of notes secured carries with it as an incident part of the security pledged for its payment.

In Davidson v. Allen, 36 Miss. 419, this court held that the indorsement by the vendor of a note given for a portion or for all of the purchase money without recourse in law or equity would not prevent a vendor's lien passing to assignee in case where the lien is assignable; also that, where in the vendor assigns a portion of the purchase money to which his lien attaches, and retains a balance, the proceeds of the land if insufficient to pay all would be distributed *pro rata* between the vendor and his assignee.

In the case of *Cage* v. *Iler*, 5 Smedes & M. 410, 43 Am. Dec. 521, this court held that, where several notes maturing at different periods are secured by a deed

of trust and have passed maturity, and a sale takes place under the deed of trust, the proceeds of the sale are to be applied ratably to the several notes.

In the case of *Terry* v. *Woods,* 6 Smedes & M. 139, 45 Am. Dec. 274, this court held that, where the holder of one of the series of mortgage notes indorses a note to the third person before due, and after its maturity and non-payment takes it up and again becomes the holder thereof, he would not thereby lose his recourse upon the mortgaged premises, but will be substituted again to his original rights.

In *Pugh* v. *Holt,* 27 Miss. 461, this court held that all debts secured by mortgage and due at the date of foreclosure unless a preference be given to some of them by the terms of the mortgage, or unless the original creditor designed by his contract in assigning them to impart a right of prior satisfaction to the assignee, should be paid *pro rata* in case of an insufficiency in the mortgage fund to pay the whole. This rule applied to controversy between the security of the mortgagor and the mortgagee, or between different assignees of the note.

In *Wooten* v. *Buchanan,* 49 Miss. 386, this court held that, where there are several notes secured by a mortgage, and all of the notes are due, the money arising from a sale of the mortgaged property should be applied ratably to the several notes secured by the instrument, and this whether there had been a judgment obtained upon one of the notes or not.

In the case of *Green* v. *Morris,* 78 So. 550, we held that *bona-fide* purchasers from the indorsee of a part of a series of notes secured by a deed of trust are not affected by collateral oral agreements between the payee and his indorsee, by which the notes rendered should have a priority of payment over those indorsed in the absence of notes to the purchasers of such agreement, but they are entitled to share *pro rata.*

There is not a syllable in the record to show that the New York bank, the St. Louis bank, or the bank at Natchez, which brought the other notes of this series, had any notice whatever of the transfer of the note held by the Louisiana bank, or of any agreement by understanding between the First Natchez Bank and and the Louisiana Bank, and certainly under the decisions above cited these parties had a right to share in the security for these debts.

The receivers of the bank, while they have the legal titles of the bank to its assets and paper, represent the creditors generally, being more the representatives of the creditors than of the bank.

The decision of the majority puts this court in this attitude: If a note is payable in some other state, and transfer is made here, and the security is in Mississippi, then Mississippi law does not govern, but that the law of the state where the note is payable governs, but if the note is payable in Mississippi, and the transfer is in the other state, and the property is in the other state, that the transaction is also governed by the laws of the other state, and not the laws of Mississippi.

The consequences of this decision has been tellingly illustrated in brief of one of the counsel for appellee in substance as follows: Suppose that the New York law, where one of the notes was assigned, held that the note first due had preference over the balance, and that it held this note, and was therefore entitled to preference under the laws of New York, where the assignment was made. Suppose that the Missouri law held that the notes first assigned had preference, and that its note was assigned prior to the others, and that the Missouri law governed, and that it would take in preference to the New York, Mississippi, and Louisiana holders of these notes, and suppose that the Mississippi law held that, where the notes was assigned in Mississippi, the holder was entitled to share equally with all the

others, the fund being insufficient to pay all, and suppose the Louisiana holder contended that under the Louisiana law, where his assignment was made, the residents of Louisiana, where the property was situated, would have preference, then we would have four inconsistent claims of preference, all based upon the doctrine of the majority in this case that the law of the place of assignment governs as to the rights of the parties, and not the law of the place where the contract is to be performed.

There is no question in this record affecting the validity of contract of assignment to the Louisiana Bank. Its right to the note and such rights as the ownership or possession of said note gives is concededly the property, for the purpose of this suit, of the Louisiana Bank or its assignee, the appellants, but when the Louisiana Bank took this note, it took it subject to the law of the place where the contract is to be performed. It could not require the maker of the note to come to Louisiana to pay it or to consent that it should become payable in Louisiana, but it must present it at the place of payment named in the note, to wit, at the said First Natchez Bank in Natchez, Miss. It bought only such rights as the bank, its assignor, had in the note. It could not force other holders of notes to recognize any superior rights. Suppose that, instead of the Tensas River Planting Company assigning all of the notes to the First Natchez Bank, it had itself made the same assignments that the First Natchez Bank made. Is there any reason why the same rule would not prevail? The notes being payable in Mississippi, would they then have been governed by the Mississippi law? To hold that the obligation of the note is changed by each assignment of the note would create the utmost confusion in the business world. Suppose, for instance, that the Louisiana Bank, instead of bringing this suit, had in turn assigned this note to a party in Texas. Would the obligation of the note then by such assignment be

the law of Texas, and would other holders of notes have to surrender whatever rights they had to conform to the Texas law? And, if so, suppose then the Texas Bank or holder should transfer the paper to a party in Oklahoma; would the obligations and rights of parties interested in the notes be governed by the law of Oklahoma? Manifestly not. The obligations of all the notes are governed and the rights of the holders are determined by the law of the place where the note was made payable, and the rights do not shift by any transfer or assignment. In this case, however, the right of the Louisiana Bank in the note is not absolute, but is conditional. It is not shown that it has ever acquired any more right than to hold the note as collateral security, or to sell the same in default of payment of the original debt; and it is not shown that the note of the First Natchez Bank held by the Louisiana Bank has been credited for any amount derived from the sale or collection of this note, or the claim against the First Natchez Bank diminished or satisfied. The decision of the majority gives the appellants an unfair preference over other creditors of the First Natchez Bank.