FINCH *v.* ESTES, et al.

April 5, 1954

No. 39182          59 Adv. S. 18          71 So. 2d 457

*Cunningham & Cunningham,* Booneville, for appellant.

*T. S. Tubb,* West Point; *W. W. Brand,* Houston; *Small-wood & Darden,* New Albany, for appellees.

GILLESPIE, J.

The appellant filed her bill to enforce specific performance of an oral contract to make a will. Appellees, defendants below, were the heirs at law of Malcolm N. McCaskill, deceased. The averments of the bill are substantially set out herein. Mrs. Finch, appellant, was a sister of Malcolm N. McCaskill, deceased. McCaskill was a man of unusual traits of character. He became interested in the oil and gas business while a youth, eventually becoming a "wildcatter" in search of oil. He met with little success in his quest for oil and gas, but he persisted, and for many years believed that there was oil and gas in northeast Mississippi. He attempted to drill two wells in Chickasaw County, Mississippi, but lack of finances forced abandonment of the projects. McCaskill never once gave up the idea that he would someday "hit it rich" in northeast Mississippi.

McCaskill had a hectic domestic career. His first wife divorced him, and his two children by her alienated themselves from him; his health was bad; he was an alcoholic. He married again, but this marriage soon ended in divorce. By 1942, McCaskill was a defeated man, broken in health, without money or friends, and so emotionally

disturbed that he was contemplating suicide. Thus it was that McCaskill turned to his sister, Mrs. Finch, and asked her to arrange for him to come to California where she lived.

Mrs. Finch arranged for McCaskill to come to her in California. When he got there, he told his sister that she was the only one who loved or cared for him; that she only could afford him companionship, sympathy and comfort. He made it known to his sister that no one but her could rescue him from his hopeless situation.

In this setting it was that an oral contract was made between McCaskill and his sister, Mrs. Finch, — the one here sought to be specifically enforced. He proposed that if Mrs. Finch would afford him a place to stay, nurse and doctor him in his suffering, comfort him with sisterly care and association, assist him in conquering alcoholism, aid him in his correspondence, furnish him with such funds as she could (her means being limited)— in short, rehabilitate him so that he could return to Northeast Mississippi—that he would make and publish a will bequeathing Mrs. Finch one-half of whatever estate he might own at death. This will was to be made when he realized his objective of becoming rich from oil or gas. McCaskill assured his sister that he. would some-day become rich. Realizing the uncertain contingency of McCaskill becoming rich, his sister was slow to ac-cept; but accept she did, and the contract was solemnly closed in the spring of 1942, in the State of California. This contract was oral and no place of performance was specified.

Mrs. Finch avers that she performed the contract faith-fully, extending over a period of about four years. Dur-ing much of this time, McCaskill was irritable and unruly and given to dangerous moods. He was a heavy man; she had to lift him when he was drunk. She nursed him, fed him, gave him medicine, and often handled him as if he were a child. He had only his pension for in-come. Mrs. Finch saw that he got the necessities of life,

spending several thousand dollars—all she had—in doing so. She took his dictation of letters, furnished conveyances to drive him about, bore his temper and abuse, and ministered unto him generally. In performing this contract, Mrs. Finch spent all her funds, depleted her credit, lost her friends and social advantages, gave up her church work, broke her health and suffered a nervous breakdown. The bill further charges that Mrs. Finch could not be restored to her former position in life for the reasons herein stated.

In 1946, McCaskill was sufficiently rehabilitated to enable him to go to Mississippi where he secured certain oil and gas leases in Chickasaw, Monroe and Lowndes Counties. He brought in a gas well and "struck it rich" in November, 1951. Soon after he had thus realized his life's dream of riches, McCaskill died in March, 1952. Shortly before his death, McCaskill established a common law marriage relationship with his second wife, one of the appellees. He never made the will he had promised Mrs. Finch he would make, and died intestate. The bill is lengthy and skillfully drawn, and the facts have been drained of every conclusion and inference. It is averred that Mrs. Finch cannot possibly be restored to her former position in life financially, socially, or as to her health; that quantum merit compensation for her services in performing the contract would not be adequate as her services could not be measured in dollars. She prayed for specific performance of the contract and general relief. The bill is in general terms; the amount of money spent by Mrs. Finch is described as "a few thousand dollars." There is no request for quantum merit claim for value of the services rendered.

In the bill it is claimed that the statute of frauds is insufficient to bar the action because appellees are estopped to rely thereon because the failure to make the will was an unconscionable act of fraud, because appellant cannot be restored to her former status, and because

she cannot be adequately compensated on a quantum merit basis.

The chancellor sustained a demurrer to the bill. For purposes of considering whether the chancellor erred we must take as true the facts well pleaded.

▊▊▊ (1) We must first determine whether this is a California or a Mississippi contract. It was made and performed by Mrs. Finch in California. Although it was McCaskill's intention to find his wealth in Mississippi, there was no provision as to where he would perform the contract on his part—the making of the will. We are, therefore, of the opinion that it was a California contract and the laws of that state apply. Jones, et al. v. Perkins, et al., 29 Miss. 139; Couret, et al. v. Conner, et al., 118 Miss. 374, 79 So. 230; 17 C. J. S., Contracts, Par. 16 (a), p. 345.

▊▊▊ (2) The remaining question is whether the contract is invalid under the California Statute of Frauds. Appellant contends that a statute of frauds made to prevent frauds cannot be used as an instrument of fraud; that the statute of frauds should not be applied when to do so would unjustly enrich appellees; that because of the onerous and peculiar duties performed by appellant, compensation on a quantum merit basis is inadequate. These are substantially the reasons on which appellant bases her contention that appellees should be estopped to invoke the statute of frauds.

The applicable part of the California Statute of Frauds is as follows:

"Statute of Frauds: Contracts that must be written. The following contracts are invalid, unless the same or some note or memorandum thereof, is in writing and subscribed by the party to be charged or by his agent: . . . (6) An agreement which by its terms is not to be performed during the lifetime of the promisor, or an agreement to devise or bequeath any property, or to make any provision for any person by will."

There is a wealth of case law in California on the question here under consideration. No purpose would be served by citing and analyzing the score or more cases more or less in point. We content ourselves with considering some of the leading cases. Three leading cases relied on by appellant are: Notten, et al. v. Mensing, et al., 45 P. 2d 198 (Cal. 1935); Montgomery, et al. v. Moreland, 205 F. 2d 865 (9th Circ. 1953); and Monarco v. LoGreco, 220 P. 2d 737 (Cal. 1950). These cases are sufficient to indicate the appellant's view of the California law.

In the Notten case, supra, there was an oral contract between man and wife to execute reciprocal wills leaving the property to their respective collateral kin upon death of the survivor; the making of the reciprocal wills pursuant to the agreement; the death of the husband before either will was revoked; the acceptance by the wife of the benefits of the husband's will; the revocation of her will by the wife and making a new one violative of the oral agreement. The Court held the bill good on demurrer on the ground that a constructive fraud sufficient to raise the estoppel had been practiced on the first decedent and on the beneficiaries of the oral agreement. It will be noted that the wills *were executed* in that case. Nor was there a question that quantum merit might be adequate.

In the Montgomery case, also involving California law and the statute of frauds, the Court's holding is fairly stated in the syllabus as follows: ''Where employee changed his position depending upon his contract with new employer who agreed to pay bonus at end of first year of employment, application of statute of frauds would work unconscionable injury upon employee and bestow unjustified enrichment upon employer, and, therefore, statute would not be given application.''

The leading case relied upon by the appellant, and the one wherein the Supreme Court of California has given

the widest application to the doctrine of estoppel to invoke the statute of frauds is Monarco v. LoGreco, supra. In that case, Natale and Carmela Castiglia were man and wife. Christie LoGreco was Carmela's son by a former marriage. In 1926, Christie decided to leave home and seek his living. Natale and Carmela made an oral proposal that if Christie would stay with them and work in the family venture they would keep their property in joint tenancy and leave it to Christie on the death of the survivor of Natale and Carmela. Christie stayed with the family venture and worked diligently for over twenty years; he gave up any opportunity for education or any chance of accumulating property of his own. He received only his room and board and spending money. Natale and Carmela put their property in joint tenancy and made wills as agreed, with Christie the ultimate beneficiary. The venture was successful and was worth $100,000.00 when Natale died. Shortly before he died, Natale terminated the joint tenancy and made a new will leaving all his share of the venture to Carmen Monarco, his grandchild, the son of a deceased daughter by a former marriage. The Supreme Court affirmed the judgment of the lower court, holding that Carmen Monarco was estopped from relying on the statute of frauds, and laid down the rule as follows:

"The controlling question is whether plaintiff is estopped from relying upon the statute of frauds (Civil Code p. 1624; Code Civ. Proc. p. 1973) to defeat the enforcement of the oral contract. The doctrine of estoppel to assert the statute of frauds has been consistently applied by the courts of this state to prevent fraud that would result from refusal to enforce oral contracts in certain circumstances. Such fraud may inhere in the unconscionable injury that would result from denying enforcement of the contract after one party has been induced by the other seriously to change his position in reliance on the contract, . . . or in the unjust enrichment that would result if a party who has re-

ceived the benefits of the other's performance were allowed to rely upon the statute.''

Of the cases relied upon by the appellees, the following are representative and controlling on the question: Murdock v. Swanson, et al., 193 P. 2d 81 (Cal. 1948); Ruinello v. Murray, 227 P. 2d 251 (Cal. 1951); Jirschik v. Farmers and Merchants National Bank, et al., 237 P. 2d 49 (Cal. 1951); and Chahon v. Schneider, 256 P. 2d 54 (Cal. 1953). These cases are not at variance with those relied upon by appellant. The distinction is in the facts upon which they are based. An analysis of the California cases on the subject reveals that estoppel depends upon the facts in every case. In all the last cited cases, except Ruinello v. Murray, supra, the suits involved oral contracts to make a will in return for the promisee rendering certain personal services such as nursing, etc. The facts in these cases are basically the same as alleged by appellant, and in all three of these California cases, the Court held there was no estoppel. The California cases hold that equity will not apply the doctrine of estoppel if the services are compensable in damages or in quantum merit; when such is the case, there is no unjust enrichment and no unconscionable injury results from applying the statute of frauds. There was no fraud practiced on appellant unless it inhered in McCaskill's failure to make the will, and fraud does not inhere in such failure when the services are compensable in quantum merit.

Considered in the light of the California cases, the appellant had an adequate remedy to be compensated on a quantum merit basis. The equitable doctrine of estoppel does not apply to prevent appellees from invoking the statute of frauds.

Affirmed.

All justices concur, except McGehee, C. J., who took no part.